THE STATE OF OHIO, APPELLEE, *v.* MCLAUGHLIN, APPELLANT.

[Cite as State v. McLaughlin, 4 Ohio App. 2d 327.]

(No. 26886—Decided December 9, 1965.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Lloyd O. Brown,* for appellee.

*Mr. Elmer Giuliani* and *Mrs. Carol G. Emerling,* for appellant.

*Per Curiam.* This appeal comes before this court on questions of law from a judgment rendered in the Juvenile Court.

The defendant, appellant herein, Virginia McLaughlin, was charged by affidavit that she did aid, abet, induce, cause, encourage and contribute toward the delinquency of Mary Ann McLaughlin, a minor of the age of sixteen years, and that on or about August 12, 1961, to on or about September 29, 1963, the said Virginia McLaughlin, being an adult female person and the mother of the aforesaid minor, did on occasions during the period aforesaid instruct the child in birth preventive methods; did show such child where and how to purchase the means of such preventative; did instruct the child that if the child were to engage in sexual activity said child was to use birth preventive methods; and did, by this means, encourage such child to engage in sexual activities with a number of male persons, to

wit: charging her with violation of Section 2151.41, Revised Code.

Mary Ann McLaughlin was born on August 14, 1947. On August 3, 1961, at the age of thirteen, she gave birth to a child. After learning that Mary Ann was pregnant, Virginia McLaughlin, the defendant, told Mary Ann that she was not to have sexual relations with boys; but if she did she was to be sure to have the boys use protection. It was explained to Mary Ann by her mother that protection meant "rubbers" and that they could be purchased in any drugstore. On November 3, 1962, at the age of fifteen, Mary Ann gave birth to her second child. After learning of Mary Ann's second pregnancy, the defendant again cautioned Mary Ann about having sexual relations without using protection. She told her not to engage in sexual activity with men, but to be sure and use protection if she did. On September 29, 1963, at the age of sixteen, Mary Ann gave birth to a third child.

In December of 1962, after an argument between Mary Ann and her mother, Virginia McLaughlin, and after the birth of Mary Ann's second child, Mary Ann was adjudged a delinquent and placed on probation by the Juvenile Court. Her mother had signed an affidavit charging Mary Ann with incorrigibility.

In 1963, after the birth of her third child, Mary Ann and her mother were brought before the Juvenile Court for a hearing. Because of the testimony given at that time, Mary Ann was sent to the Girls' Industrial School and Mrs. McLaughlin was charged with contributing to the delinquency of a minor under Section 2151.41, Revised Code. Mrs. McLaughlin was tried by a jury and convicted of violating that statute.

In her brief, the appellant alleges the following errors:

1. The trial court's refusal to grant the defendant's motion for discharge violated appellant's rights to freedom of speech, to privacy, and to educate her child, as these rights are protected under Article I, Sections 11, 14 and 20 of the Ohio Constitution, and under the First and Fourth Amendments to the United States Constitution as applied to the states through the Fourteenth Amendment and under the Fourteenth Amendment.

2. The trial court's refusal to grant appellant's motion for discharge at the conclusion of the state's case was contrary to law.

3. A jury verdict finding the appellant guilty of contributing to the delinquency of her minor daughter is manifestly against the weight of the evidence and denied appellant due process of law under Article I, Section 16 of the Ohio Constitution, and under the Fourteenth Amendment to the United States Constitution.

Under the defendant's first assignment of error it is alleged that certain rights guaranteed her by the federal Constitution and the Constitution of Ohio have been violated. Major parts of each of the several briefs submitted in this action on behalf of the defendant are directed toward convincing this court that the trial and conviction of the defendant violated her constitutionally-guaranteed right to free speech.

The First Amendment to the United States Constitution reads as follows:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

Article I, Section 11 of the Ohio Constitution, reads in part as follows:

"Every citizen may freely speak, write, and publish his sentiments on all subjects, *being responsible for the abuse of the right*; and no law shall be passed to restrain or abridge the liberty of speech, or of the press. * * *" (Emphasis added.)

It cannot be questioned that the right of free speech is a cherished right. It is a right on which a sound democratic society stands. It is the unquestioned duty of the courts to insure that it is protected. Even so, it is unnecessary to go into numerous citations to show that the right of free speech is not protected in every instance.

"* * * A reasonable infringement of the freedom of speech or press will be sustained under the police power, and an abuse of the freedom may be punished. * * *" 10 Ohio Jurisprudence 2d 437, Constitutional Law, Section 362.

By virtue of the police power which every state has, certain laws are passed which, as it is often stated, must have reference to the comfort, safety, health, morals, or welfare of society. *City of Cincinnati* v. *Correll,* 141 Ohio St. 535.

Section 2151.41 of the Revised Code is a statute enacted by virtue of the police power of the state of Ohio. It reads in part as follows:

"No person shall abuse a child or aid, abet, induce, cause, encourage, or contribute to the dependency, neglect, or delinquency of a child or a ward of the Juvenile Court, or act in a way tending to cause delinquency in such child. * * *"

In a Supreme Court decision involving the case of *Herndon* v. *Lowry, Sheriff,* 301 U. S. 242, paragraph three of the syllabus states:

"The power of a state to abridge freedom of speech and of assembly is the exception rather than the rule; and the penalizing even of utterances of a defined character must find its justification in a reasonable apprehension of danger to organized government. The limitation upon individual liberty must have appropriate relation to the safety of the state. Legislation which goes beyond this need violates the Constitution."

This court is asked to decide whether the trial and conviction of a mother for words she has spoken to her daughter constitute a violation of her right of free speech. The state alleges that when certain words are spoken, which quite conceivably could stimulate a child to violate the law, then by virtue of its police power it may prosecute the speaker of those words. The defendant alleges, on the other hand, that any prosecution and conviction merely for exercising one's right to speak is a violation of constitutionally-guaranteed rights.

We must determine here which shall give way when a confrontation occurs between an individual asserting his constitutional right of "freedom of speech" and a state asserting its right to act for the common welfare of citizens under its police powers.

It should be noted at this point that the line of separation that exists between the federal guarantee of free speech and the state's police power is not a clearly-defined one. In the struggle to obtain one or the other, many strong majority opinions have

been written, but very rarely without vigorous dissenting ones.

The earliest attempt to invoke the aid of the Supreme Court of the United States against state action in suppressing free speech was brought about in the case of *Patterson* v. *Colorado, ex rel. Atty. Genl.*, 205 U. S. 454. In that case the defendant was charged with publishing certain articles which were intended to embarrass the Supreme Court of Colorado. The United States Supreme Court, speaking through Mr. Justice Holmes, held that this was purely a matter of local law with which the court would not interfere. The next attempt took place in the case of *Mutual Film Corp.* v. *Industrial Commission of Ohio,* 236 U. S. 230. There the complainant was engaged in the business of purchasing, selling and leasing motion picture films. Under an Ohio statute, the complainant was compelled to submit his films for approval to the board of censors. Despite the contention that the statute violated the First and Fourteenth Amendments to the Constitution, the Supreme Court of the United States sustained the state's contention that it was engaged in a valid exercise of its police power. Then, in *Gilbert* v. *Minnesota,* 254 U. S. 325, the defendant was convicted of violating a Minnesota statute which made it unlawful to interfere with or discourage the enlistment of men in the military forces. Again, the Supreme Court of the United States held that the statute was valid, as the state under its police power had the right to preserve its internal peace. However, in a notable dissenting opinion, Mr. Justice Brandeis brought forth a new and novel idea that freedom of speech under the First Amendment is protected under the Fourteenth Amendment against abridgment by the states. As this idea began to take root in the minds of the judiciary, "tests" began to emerge for determining when, by virtue of their police power, the states might abridge the right of free speech.

The first of these so-called tests was called the "bad tendency" test. According to this doctrine, expression which had a tendency, or which the Legislature could reasonably believe had a tendency, to lead to substantial evil could be prohibited. In *Gitlow* v. *People,* 268 U. S. 652, paragraph three of the syllabus reads as follows:

"That a state, in the exercise of its police power, may pun-

ish those who abuse this freedom by utterances inimical to the public welfare, tending to corrupt public morals, incite to crime or disturb the public peace, is not open to question.''

The ''bad tendency'' test offers virtually no protection to freedom of expression. In theory all other social values or objectives are preferred to allowance of expression where any apparent conflict between the two exists. The test has now been abandoned. *Dennis* v. *United States,* 341 U. S. 494.

The ''bad tendency'' test came to be superseded by the ''clear and present danger test.'' Mr. Justice Holmes brought forth that test in *Schenck* v. *United States,* 249 U. S. 47, when he wrote, at page 52:

''* * * The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent. * * *''

The doctrine was elaborated on by Mr. Justice Brandeis in a concurring opinion in *Whitney* v. *California,* 274 U. S. 357. By applying the above ''clear and present danger test'' many convictions have been reversed by the Supreme Court because the interest which the state was trying to protect was too insubstantial to warrant restriction of speech. See: *Cantwell* v. *Connecticut,* 310 U. S. 296; *Schneider* v. *State,* 308 U. S. 147; *Martin* v. *Struthers,* 319 U. S. 141; *Thomas* v. *Collins, Sheriff,* 323 U. S. 516; *Marsh* v. *Alabama,* 326 U. S. 501; *Prince* v. *Massachusetts,* 321 U. S. 158; *Cox* v. *New Hampshire,* 312 U. S. 569.

In *Terminiello* v. *Chicago,* 337 U. S. 1, the petitioner had made a speech to a large audience, in which he stirred their hostilities. In some of the listeners this hostility was converted into concrete action. The petitioner was convicted of violating the following statute:

''All persons who shall make, aid, countenance, or assist in making any improper noise, riot, disturbance, breach of the peace, * * * within the limits of the city * * * shall be deemed guilty of disorderly conduct, * * *.''

The Supreme Court in a five-to-four decision had this to say, at page four, while reversing in favor of the petitioner:

''Accordingly a function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose where it induces a condition of unrest, creates

dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute * * * is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest. * * * There is no room under our Constitution for a more restrictive view. * * *

"The ordinance as construed by the trial court seriously invaded this province. It permitted conviction of petitioner if his speech stirred people to anger, invited public dispute, or brought about a condition of unrest. A conviction resting on any of those grounds may not stand."

There is some contention that the "clear and present danger" test has now been abandoned by the Supreme Court because of its reasoning in *Dennis* v. *United States,* 341 U. S. 494. Under the theory advanced in that case, the court must, in each controversy, balance the individual and social interest in freedom of expression against the social interest sought by the regulation which restricts expression. In the *Dennis case,* the court was confronted with a dilemma. Its desire was to seriously curtail the activities of Communistic speakers who openly advocated the overthrow of the United States government. Yet, if the "clear and present danger" test was applied, there was no evidence that the danger of overthrow was imminent, and hence the court could not affirm an abridgment of free speech. The "ad hoc balancing" test was the result. It allowed the court to uphold the conviction where no immediate danger was threatened. It must be noted at this point that this test has only been applied to the detriment of free speech when the danger, even though not immediate, was a threat to national government, the very mainstay of our democratic society. In 1962, the court was not faced with such a problem and went back to the "clear and present danger" test to invalidate a conviction for contempt of court based upon utterances alleged to interfere with a grand jury proceeding. *Wood* v. *Georgia,* 370 U. S. 375.

We must conclude from the above that "the clear and pres-

ent danger'' test may still be used as a method for determining whether the abridgment of free speech should be permitted.

In *Dennis* v. *United States,* 341 U. S. 494, the Supreme Court, in speaking of the ''clear and present danger'' cases, said at page 505:

''The rule we deduce from these cases is that where an offense is specified by a statute in nonspeech or nonpress terms, a conviction relying upon speech or press as evidence of violation may be sustained only when the speech or publication created a 'clear and present danger' of attempting or accomplishing the prohibited crime, *e. g.*, interference with enlistment. * * *''

In applying the above rule to our immediate fact situation, we do not believe that a mother's instructions to her daughter that birth preventive measures should be used in premarital sexual acts create a ''clear and present danger'' of an evil which the state may prevent by the abridgment of constitutionally-guaranteed rights. Neither is there a ''clear and present danger'' of accomplishing the prohibited crime, *i. e.*, contributing to the delinquency of a minor.

''When facts are found that establish the violation of a statute, the protection against conviction afforded by the First Amendment is a matter of law. The doctrine that there must be a clear and present danger of a substantive evil that Congress has a right to prevent is a judicial rule to be applied as a matter of law by the courts. The guilt is established by proof of facts. Whether the First Amendment protects the activity which constitutes the violation of the statute must depend upon a judicial determination of the scope of the First Amendment applied to the circumstances of the case.'' *Dennis* v. *United States,* 341 U. S. 494, at page 513.

It would seem then that there is an imaginary line which separates speech which can be considered immune from state restrictions and speech in which the state has a substantial enough interest so that a restriction will be permitted. On which side of the line a certain utterance is to be placed is a matter for the courts to decide, taking into account the facts and circumstances surrounding a given case. Whether we apply the ''clear and present danger'' test as used in *Wood* v. *Georgia,* 370 U. S.

375, or the "balancing of interest" test used in *Dennis* v. *United States,* 341 U. S. 494, to our present fact situation, we come to the same conclusion. The state does not have a substantial enough interest to restrict speech in cases where a mother, in the only way she knows how, instructs her child in ways to prevent conception before marriage. In the instant case we have the added fact that a pregnancy had already preceded the instruction.

Can anyone argue that it is wrong for parents to attempt to educate their own children in areas which are grossly neglected by our school systems? This is not only a parental right; it is a duty. This duty and right extend not only to parents who are educated and skilled in the use of the English language. We will not penalize a parent for not knowing how to be more discreet in a choice of words.

We do not contend that the words which were spoken could not possibly have contributed toward further delinquent acts. There is a possibility that they may have. However, since there is no evidence of any affirmative acts by the mother other than the words she spoke, this court is reminded of the age old adage that the law deals in probabilities not possibilities.

We, therefore, hold that:

1. Section 2151.41 of the Revised Code was unconstitutionally applied in the lower court.

2. The trial and conviction of a parent for words alone are contrary to law.

3. The verdict was against the weight of the evidence, since there is no evidence showing that what was said and done actually had any effect on the acts of the child.

The judgment is reversed and final judgment rendered for the defendant. The defendant is discharged.

*Judgment reversed.*

Silbert, C. J., Wasserman and Skeel, JJ., concur.