RADECKI ET AL., APPELLEES, *v.* SCHUCKARDT ET AL., APPELLANTS.

[Cite as Radecki v. Schuckardt (1976), 50 Ohio App. 2d 92.]

(No. 7873—Decided November 5, 1976.)

*Mr. James A. Baird* and *Mr. Bliss Bignall, Jr.,* for appellants.

*Messrs. Cline, Bischoff & Cook Co., Mr. Wolfgang Drescher, Mr. Robert A. Skinner,* and *Mr. John Nolette,* for appellees.

BROWN, P. J. The two plaintiffs, appellees herein, filed an action for the alienation of affections of their wives against defendants Bishop Francis K. Schuckardt and Christ the King Priory, Inc., in the Lucas County Court of Common Pleas. A jury returned a verdict of $33,000 compensatory and $15,000 punitive damages in favor of the plaintiffs. From that judgment the defendants appeal.

Bishop Francis K. Schuckardt and Christ the King Priory, Inc., an Idaho non-profit corporation, profess to represent the true Roman Catholic Church. Bishop Schuckardt and the church he heads disagree with many of the

changes in the Catholic Church made after the Vatican II Council. Catherine and Emily Radecki, wives of plaintiffs Joseph and Henry Radecki, respectively, became interested in Bishop Schuckardt's version of the Catholic religion in 1963. Catherine and Emily encouraged Bishop Schuckardt to lecture in Toledo. This association with the teachings of Bishop Schuckardt led to friction between the two marriage partners. Because of the concern of Catherine and Emily that their children receive proper religious training in the manner prescribed by Bishop Schuckardt; Emily and Catherine sent their youngest children to Bishop Schuckardt's school and religious center in Coeur d'Alene, Idaho. Rigorous discipline, close supervision and extensive religious indoctrination of the children existed in this school. Joseph Radecki flew to Coeur d'Alene, Idaho, in August, 1973, to bring the Radecki children back to Toledo. The wives successfully hid the children from Joseph Radecki.

The ten-day trial resulted in four volumes of testimony and trial proceedings. Much of the evidence is irrelevant. It is unrelated to the issue pertaining to alienation of affections of plaintiffs' wives. For example, there is a seemingly endless array of witnesses and testimony pertaining to unrelated incidents and dealings between defendants and third persons having no connection with plaintiffs' claims, a detailed exposition of religious doctrine and teachings by defendants, and a comparison or contrast of defendants' teachings with the doctrine of the established Catholic Church which recognizes the Pope as its head. Volumes of testimony were elicited on a comparison of the school systems and the interpretation and thrust of the Pauline Privilege and its misapplication.

Divorce actions are now pending between the Radecki marriage partners.

The first four assignments of error in essence contend that the evidence is insufficient to sustain a verdict for plaintiffs, that the verdict for plaintiffs is contrary to law, and that a directed verdict and judgment for defendants notwithstanding the verdict should have been granted

to defendants by the trial court. The thrust of defendants' brief is that defendants are entitled to a final judgment and that the Court of Appeals is empowered to render such judgment on the record in this case.

The requisite elements of alienation of affections are stated in *Trainor* v. *Deters* (1969), 22 Ohio App. 2d 135.

Paragraph one of the syllabus states:

"Alienation of affections is the commission of a willful and malicious injury. And, in an action seeking recovery therefor, it is necessary that plaintiff prove that defendant was the aggressor, or at the very least, aided or abetted the transfer or diversion of the affections of the errant spouse; that is, that defendant wrongfully, maliciously and intentionally enticed, induced, persuaded and caused plaintiff's spouse to lose affection for plaintiff and that defendant intended to bring about the alienation." See also, *Holtz* v. *Dick* (1884), 42 Ohio St. 23; 28 Ohio Jurisprudence 2d 268, Husband and Wife, Section 143; Annotation 19 A. L. R. 2d 471, 472, 486, Sections 2 and 3; Prosser, Law of Torts (4th Ed. 1971), Section 124.

In the case at bar, the alleged misconduct by the defendants is the dissemination of the belief that a person should follow the Bishop Schuckardt approach to the Catholic faith and, if necessary, a person should leave a spouse who interferes with such practice of religion. This kind of advocacy of a religious faith and tenets incident thereto is not illegal. *Bradesku* v. *Antion* (1969), 21 Ohio App. 2d 67. In *Bradesku* v. *Antion*, the plaintiff brought an action for alienation of affections against the Radio Church of God and its minister for explaining to his wife that marriage to a divorced man is an adulterous act and that a divorced man does not have a right to remarry. The court in *Bradesku* stated, at page 73:

"The right to advocate and to disseminate any religious faith, no matter how offensive or ridiculous to others, short of a faith dedicated to the overthrow of the government by force, is guaranteed by the Constitution of the United States, and is binding on the states. See: *School District of Abington* v. *Schempp*, 374 U. S. 203."

See also, *Hughes* v. *Holman* (1924), 110 Ore. 415, 223 P. 730; *Wisconsin* v. *Yoder* (1972), 406 U. S. 205, 214-215; *Cantwell* v. *Conn.* (1940), 310 U. S. 296, 310; *Reynolds* v. *United States* (1878), 98 U. S. 145 (prohibition of polygamy); Annotation 31 A. L. R. 1115; *Carrieri* v. *Bush* (1966), 69 Wash. 2d 536, 419 P. 2d 132, distinguishable.

In the case *sub judice*, there is no evidence to raise a jury issue that the defendants intended to bring about the destruction of the marriages in question. The suggestion by defendant Schuckardt for a place to secrete the Radecki children so that plaintiffs could not reach them, when Catherine and Emily Radecki sought Schuckardt's advice on keeping the children out of reach of plaintiffs, constituted no proof that defendants caused plaintiffs' spouses to lose affection for plaintiffs under the standards prescribed by *Trainor, supra.* We are not concerned in this case with a claim by a parent against a third party who maliciously alienates the affections of a minor child.*

In the absence of improper motives, a religious sect has a lawful right to solicit members and to express views relevant thereto if there is nothing unlawful, improper, or immoral in such activity. *Hughes* v. *Holman, supra*; cf. 1 Harper & James, Torts (1956), Sections 8.3 and 8.4; Annotation 71 A. L. R. 3d 794.

Plaintiffs contend that the evidence is sufficient to show a right to recover for alienation of affections because the facts fall within the parameters of the principles evolved in shunning cases. *Bear* v. *Reformed Mennonite Church* (1975), 462 Penn. 330, 341 A. 2d 105.

In *Bear, supra,* shunning involved an order of the defendant church and bishops to all members of the

---

*Some jurisdictions allow a cause of action against a third party who maliciously alienates the affections of a minor child. See *Strode* v. *Gleason* (1973), 9 Wash. App. 13, 510 P. 2d 250, but see *McGrady* v. *Rosenbaum* (1970), 62 Misc. 2d 182, 308 N. Y. S. 2d 181, aff'd 324 N. Y. S. 2d 876; cf. *Rosefield* v. *Rosefield* (1963), 221 C. A. 2d 431, 34 Cal. Rptr. 479 (conspiracy to conceal child); *Brown* v. *Brown* (1953), 338 Mich. 492, 61 N. W. 2d 656, cert. den. 348 U. S. 816; *Clark* v. *Bayer* (1877), 32 Ohio St. 299.

church, including plaintiff's wife and children, to shun the plaintiff who had been excommunicated. As a consequence, plaintiff's wife and children, under such order, did not have any social or physical contact with plaintiff. These shunning cases are distinguishable. In our case, defendant Schuckardt never issued a shunning order, nor did any affirmative act equivalent to a shunning order that plaintiffs' wives should shun their husbands, the plaintiffs. *Mohn* v. *Tingley* (1923), 191 Cal. 470, 217 P. 733, cited by plaintiffs, is for other reasons distinguishable and not applicable.

The snake handling cases, and the power of the state to prohibit snake handling during religious worship services, *Hill* v. *State* (1956), 38 Ala. App. 404, 88 So. 2d 880, cert. den. 88 So. 2d 887; cases of prohibition of illegal drugs when such use is part of religious practices and the First Amendment is raised as a defense, *Leary* v. *United States* (C. A. 5, 1967), 383 F. 2d 851 and *United States* v. *Kuch* (D. C. D. C. 1968), 288 F. Supp. 439; cases of the absence of First Amendment protection to parents who refuse medical treatment for children for religious reasons, *Raleigh Fitkin— Paul Morgan Mem. Hosp.* v. *Anderson* (1964), 42 N. J. 421, 201 A. 2d 537, cert. den. 377 U. S. 985, *State* v. *Perricone* (1962), 37 N. J. 463, 181 A. 2d 751, cert. den. (1962), 371 U. S. 890, all are cases factually distinguishpable from the *Radecki* case and for that reason are inapplicable. The cited cases, upon which plaintiffs heavily rely, like the prohibition of polygamy case, *Reynolds, supra,* all present situations where a strong or compelling state interest to protect societal peace, safety, order and morals justified prohibition of the act involved, even though such prohibition seemingly restricted the First Amendment free exercise of religion rights of the persons whose conduct was restricted. The conduct of the defendants in the *Radecki* case does not fall within the categories of conduct restricted in the cases cited.

Therefore, assignments of error 1 through 4, inclusive, are well taken.

The fifth assignment of error claims that the court admitted extraneous and prejudicial evidence. The testimony challenged is a conversation between Catherine

Radecki and Bishop Brown. R. C. 2317.02 reads, in pertinent part, as follows:

"The following persons shall not testify in certain respects: * * *

"(B) A clergyman or priest concerning a confession made to him in his professional character in the course of discipline enjoined by the church to which he belongs."

The testimony challenged in this case was not privileged under R. C. 2317.02(B) because it did not refer to a confession. *In re Estate of Soeder* (1966), 7 Ohio App. 2d 271. Therefore, the fifth assignment of error is not well taken.

Assignments of error 6 to 9, inclusive, all challenge the propriety, accuracy or completeness of various parts of the general instructions given to the jury at the close of the case. With reference to the various parts of the jury instructions challenged in these last four assignments of error, the defense failed to object to the jury instructions given to the jury before the jury retired to consider its verdict. Civ. R. 51(A), provides, in part:

"* * * A party may not assign as error the giving or the failure to give any instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. * * *"

The defendants did not comply with Civ. R. 51(A). *Yungwirth* v. *McAvoy* (1972), 32 Ohio St. 2d 285.

Therefore, the last four assignments of error are not well taken.

The judgment of the Court of Common Pleas of Lucas County is reversed. Coming now to enter the judgment which the lower court should have rendered, a final judgment is hereby rendered in favor of the defendants and against the plaintiffs.

*Judgment reversed.*

POTTER and STEPHENSON, JJ., concur.

STEPHENSON, J., of the Fourth Appellate District, sitting by designation in the Sixth Appellate District.