436 Pa. Superior Ct. 262 (1994)
647 A.2d 597
COMMONWEALTH OF PENNSYLVANIA
v.
David G. STEWART, Jr.
Appeal of the ROMAN CATHOLIC DIOCESE OF ALLENTOWN.
Superior Court of Pennsylvania.
Argued March 15, 1994.
Decided August 2, 1994.
*264 Maura K. Quinlan, Harrisburg, for appellant.
Michael Dennehy, Danville, for appellee.
Before BECK, POPOVICH and HOFFMAN, JJ.
BECK, Judge.
We address inter alia the scope of the Confidential Communications to Clergymen provision of 42 Pa.C.S.A. § 5943.
Appellee David Stewart (Stewart), was charged with the murder of Reverend Leo Heineman (the victim). Prior to trial, Stewart served a subpoena duces tecum on the Roman Catholic Diocese of Allentown (the Diocese), seeking a variety of documents he claimed were relevant to his defense. The Diocese opposed the requests based on the clergymen privilege and constitutional rights of religious freedom. The trial court ordered that the documents be produced for an in camera inspection to determine whether they could be withheld from discovery as privileged material. The Diocese appealed the trial court's order and we now affirm.
In a homicide trial, a defendant asserting self-defense may introduce evidence of the violent and dangerous character of the victim in an effort to establish that the defendant reasonably believed that his life was in danger and the victim's death was justified. See Commonwealth v. Dillon, 528 Pa. 417, 598 A.2d 963 (1991). Where the evidence sought to be admitted is a prior act of violence not reduced to a criminal conviction, the law requires that the violent act or *265 acts be known to the defendant at the time of the homicide.[1]See Id. (victim's prior acts of beating defendant admissible to corroborate defendant's knowledge of victim's violent character); Commonwealth v. Ignatavich, 333 Pa.Super. 617, 482 A.2d 1044 (1984) (where appellant was not aware of victim's prior arrest for assault, evidence of assault inadmissible). The incidents of violence cannot be remote in time and must be indicative of the victim's aggressive and dangerous behavior. See Commonwealth v. Beck, 485 Pa. 475, 402 A.2d 1371 (1979) (three year old assault conviction probative and admissible); Commonwealth v. Quarles, 310 Pa.Super. 74, 456 A.2d 188 (1983) (twenty two year old conviction inadmissible). See also Amos, supra (assault conviction more probative than larceny conviction).
Pursuant to the subpoena, Stewart sought the following items of discovery:
1. All reports, letters and other documents pertaining to any allegations of misconduct or other disciplinary action regarding Rev. Leo Heineman.
2. All records, whether maintained directly by the Diocese of Allentown or by Saint Mauritius Church, Ashland, pertaining to Mardell Stewart, formerly known as Mardell Eames.
3. Copies of any Reports pertaining to any sexual misconduct by Rev. Leo Heineman.
4. Copies of all personal records, correspondence, diaries, or similar documents maintained by Rev. Leo Heineman, whether such documents were maintained at Saint Mauritis Church, or any other location.
5. Copies of any reports pertaining to any alcohol or other substance abuse or treatment by Rev. Leo Heineman.

*266 6. Copies of W-2 or similar forms showing compensation paid by the Diocese of Allentown to Rev. Leo Heineman from 1986 to 1989.
The Diocese agreed to produce documents requested in items # 2 and # 6 but filed a motion to quash the subpoena with respect to the other items. In support of the motion, the Diocese offered the affidavit of the Reverend Monsignor Nevin J. Klinger, Chancellor of the Diocese. Production of the documents was opposed on the following bases:
1. The church is hierarchical, with Canons promulgated by its highest governing authority, and two Canons require keeping a secret archive;
2. Archive documents are privileged under 42 Pa.C.S.A. § 5943 and the Pennsylvania Rules of Civil Procedure; and
3. The Canons are religious practices protected by the religious freedom guarantees of the United States and Pennsylvania Constitutions.
Preliminarily, we note that the Diocese did not object to the production of the documents on relevancy grounds, i.e., that even if produced, the documents would be inadmissible since they do not address specific acts of violence and do not pertain to acts of which appellee Stewart has personal knowledge. Indeed, the issue of relevance appears not to have been raised by the Diocese at all and, therefore, cannot be the basis for our reversing the order of the trial court. Compare Butler v. DeLuca, 329 Pa.Super. 383, 478 A.2d 840, 843 (1984) (reviewing court may affirm trial court on any ground) with Wiegand v. Wiegand, 461 Pa. 482, 337 A.2d 256, 257 (1975) (Superior Court may not consider unpresented issue and must resolve appeal on the basis of issues raised by the parties). We are mindful, however, that the trial judge stated in his opinion that he intends to inspect the documents for relevance as well as privilege. Trial Ct.Op. at 7.
We now address the issues that the Diocese preserved for our review. In support of its motion to quash the subpoena, the Diocese relied heavily on 42 Pa.C.S.A. § 5943, Confidential Communications to Clergymen. The statute provides that no *267 clergyman shall be compelled to disclose information he has acquired while in the course of his duties.[2] The Diocese's argument, as recited in Reverend Monsignor Klingers affidavit, is as follows:
The bishop fulfills [his] duties in conjunction with his priests, over whom he exercises hierarchical authority. Thus, a bishop maintains a special relationship with his priests. He provides primary support and guidance for them concerning their spiritual lives and the faithful performance of their mission within the Church. Free, frank and confidential communication between the bishop and his priests must be protected so that the bishop can fulfill his obligations to his priests and the faithful under the prescriptions of Canon Law. A bishop must be able to candidly discuss with a priest his character, talents, spiritual life, health, and pastoral or familial problems and concerns in order to be able to assign the priest to compatible duties and to provide him with appropriate guidance in the conduct of his affairs and ministry to the faithful.
Affidavit of Rev. Monsignor Nevin J. Klinger, J.C.L. at ¶ 10. Essentially, the Diocese argues that all information in its hands is confidential under the statute.
The trial court was not satisfied with the argument offered by the Diocese. It found that the affidavit did not sufficiently establish that the information sought to be withheld fell within the statute. The trial judge did not require that the documents be turned over, instead it ordered the Diocese to produce the documents for an in camera review to determine if the privilege provided for in § 5943 was applicable.
*268 In reaching its decision, the trial court relied on previous decisions of this court which define the limitations of § 5943. In Commonwealth v. Patterson, 392 Pa.Super. 331, 572 A.2d 1258 (1990), alloc. denied, 527 Pa. 631, 592 A.2d 1299 (1991), a panel of this court held that "our legislature did not intend a per se privilege for any communication to a clergymen based on his status" and, further, the court must "look to the circumstances to determine whether [the] statements were made in secrecy and confidence to a clergyman in the course of his duties." Id. at 343-44, 572 A.2d at 1265.
In a case directly analogous to this matter, another panel of this court was confronted with the question of whether § 5943 could be invoked by the Diocese of Altoona-Johnstown to preclude a party from seeking documents pertaining to alleged sexual misconduct by specific priests. Hutchinson v. Luddy, 414 Pa.Super. 138, 606 A.2d 905 (1991).[3] The same canons recited in Reverend Monsignor Klinger's affidavit were used for support in the Luddy case. The Luddy court first recognized that "insofar as the canons of the Church are in conflict with the law of the land, the canons must yield." Id. at 145, 606 A.2d at 908 (citing St. Joseph's Lithuanian Roman Catholic Church's Petition, 273 Pa. 486, 492-93, 117 A. 216, 218 (1922)).
Addressing whether and to what extent the privilege set out in § 5943 applied, the Luddy court held that information protected by the statute is limited to information told in confidence to clergymen in their role as confessor or counselor. Id. at 146-48, 606 A.2d at 909 (emphasis supplied) (citing *269 Fahlfelder v. Com., Pennsylvania Board of Probation, 80 Pa.Cmwlth. 86, 90, 470 A.2d 1130, 1133 (1984)). "The mere fact that a communication was made to a clergyman or documentation was transmitted to a clergyman is insufficient in itself to invoke the privilege." Id. (citations omitted).
The Luddy court ultimately affirmed the trial court's decision to grant the discovery requests. The order by the trial court had provided that in the event an in camera review revealed that the documents were not privileged material, i.e., were not acquired by a priest and/or bishop in his role as a confessor/counselor, discovery would be required.[4] The Luddy court rejected the Church's argument that any and all information in its secret archives automatically qualified as privileged under the statute.
We find the Luddy decision applicable to this case. The motion to quash does not set forth adequate reasons why the information sought to be withheld falls within the privilege. The supporting affidavit is so broad that it seeks to preclude from production any and all documents in the Diocese's possession. Section 5943 does not provide such sweeping protection and the trial judge was correct in ordering the Diocese to produce the documents for an in camera inspection so that he could determine whether the privilege applies. It may be that some or all of the documents fall within the statutory privilege as it is defined in our case law. In that event, the trial court will not order production of those documents. However, it is clear that the statute does not provide blanket protection for all documents in the hands of the Diocese simply because of the Diocese's status as a religious organization.
The other argument advanced by the Diocese is that production of the documents constitutes a violation of its constitutional right of free exercise of religion. We agree with the trial court that a claim of religious freedom may be *270 outweighed by the compelling interest of the state in pursuing the truth. The Luddy court addressed the same issue and held that the Free Exercise Clause did not prohibit an order requiring the Church to turn over documents for in camera review. After analysis of several federal cases interpreting the contours of the First Amendment and the rights of religious organizations to proceed without interference from the government, the Luddy court stated:
We hold, consistently with the decided cases, that where the only action required of a religious institution is the disclosure of relevant, non-privileged documents to an adversary in civil litigation, such action, without more, poses no threat of governmental interference with the free exercise of religion.
Luddy, 414 Pa.Super. at 152, 606 A.2d at 912. The fact that this is a criminal action does not persuade us to rule differently with respect to this issue. The rights of a criminal defendant to secure a fair trial are even more compelling than the interests involved in civil litigation. Further, we find the Diocese's claim that production of the documents "would have a serious deleterious impact upon the whole function of the Church" to be unsupported. We therefore reject the Diocese's free exercise argument.
After studying the record and the trial court's opinion, we are confident that the result reached by the trial court is fair and appropriate under these circumstances. Neither the statute nor our constitutions grant the Diocese the right to withhold from production all documents in its possession. After a careful in camera review of the documents, based on both relevance and privilege, the trial court will inform the parties which documents, if any, are to be produced.
Order denying the Diocese's motion and requiring it to produce the challenged documents for in camera review affirmed. Matter remanded for further proceedings. Jurisdiction relinquished.
POPOVICH, J., files a dissenting opinion.
*271 POPOVICH, Judge, dissenting.
Because I construe the language of 42 Pa.C.S.A. § 5943 in a light differently than my esteemed colleagues, I cannot, in good conscience, subscribe to the analysis of this statute espoused by our Court in Commonwealth v. Patterson, 392 Pa.Super. 331, 572 A.2d 1258 (1990), and Hutchison v. Luddy, 414 Pa.Super. 138, 606 A.2d 905 (1992), and applied by the Majority herein.
The privilege attaching to confidential communications made to clergy stems chiefly from statutorily enacted law rather than common law. See 8 Wigmore, Evidence § 2394 (McNaughton Rev.Ed). In Pennsylvania, our General Assembly has provided the following law in recognizing that privilege:
§ 5943. Confidential communications to clergymen
No clergyman, priest, rabbi or minister of the gospel of any regularly established church or religious organization, except clergymen or ministers, who are self-ordained or who are members of religious organizations in which members other than the leader thereof are deemed clergymen or ministers, who while in the course of his duties has acquired information from any person secretly and in confidence shall be compelled, or allowed without consent of such person, to disclose that information in any legal proceeding, trial or investigation before any government unit.
1976, July 9, P.L. 586, No. 142, § 2, effective June 27, 1978.
42 Pa.C.S.A. § 5943 (emphasis added). In evaluating the question of which communications to the clergy are privileged, our courts must give heed to the words enunciated by our General Assembly in its enactment of § 5943.
"[T]his Court is without authority to insert a word into a statutory provision where the legislature has failed to supply it." Key Sav. and Loan Ass'n v. Louis John, Inc., 379 Pa.Super. 226, 232, 549 A.2d 988, 991 (1988), appeal denied, 523 Pa. 632, 564 A.2d 1260 (1989), citing, Worley v. Augustine, 310 Pa.Super. 178, 456 A.2d 558 (1983). "[W]hen the letter of a statute is clear and unambiguous, this Court is not free to *272 engraft additional verbiage upon it in a supposed effort to pursue its spirit." Black v. Billy Penn Corporation, 72 Pa. Commw. 628, 632, 457 A.2d 192, 193 (1983), citing, 1 Pa.C.S.A. § 1921(b). See Amendola v. Civil Service Commission of Crafton Borough, 139 Pa.Commw. 76, 589 A.2d 775, 777 (1991) (a court lacks power to insert words into statutory provisions where the legislature has failed to supply them). "We are to presume the legislature did not intend a result that is absurd or unreasonable." Commonwealth v. Runion, 427 Pa.Super. 217, 220, 628 A.2d 904, 906 (1993), citing, Commonwealth v. Martorano, 387 Pa.Super. 151, 563 A.2d 1229 (1989).
Here, the lower court, guided by decisions in Commonwealth v. Patterson, 392 Pa.Super. 331, 572 A.2d 1258 (1990), alloc. denied, 527 Pa. 631, 592 A.2d 1299 (1991), and in Fahlfeder v. Pa. Board of Probation and Parole, 80 Pa. Commw. 86, 470 A.2d 1130 (1984), found that the privilege is limited to information told in confidence to a clergyman in his role as a counselor or confessor. The court below determined that the Diocese had failed to establish that the information was obtained from a confessional or counselable relationship and thus rejected the Diocese's assertion that the documents were protected from disclosure under § 5943.
In Patterson, 392 Pa.Super. at 341-45, 572 A.2d at 1264-65, and in Hutchison v. Luddy, 414 Pa.Super. 138, 145-50, 606 A.2d 905, 909-910 (1992), appeal discontinued, 531 Pa. 640, 611 A.2d 712 (1992), panels of our Court interpreted the language of § 5943 to limit the privilege to communications made for religious purposes wherein spiritual advice or forgiveness was sought.
The Diocese maintains that the General Assembly could have drafted the statute, as other states have done, to include words expressly limiting the privilege of confidential communication to clergy to information where the clergyman is acting in the sacramental capacity of a confessor or as a spiritual advisor. Indeed, § 5943 is completely devoid of such language requiring that privileged information be limited to that context. Instead, our General Assembly provided, "No clergyman. . . who while in the course of his duties has acquired *273 information from any person secretly and in confidence shall be compelled, or allowed without consent of such person, to disclose that information in any legal proceeding. . . ." 42 Pa.C.S.A. § 5943 (emphasis added). Contra N.Y.Civ.Prac.L. & R. 4505 (McKinney) ("Unless the person confessing or confiding waives the privilege, a clergyman . . . shall not be allowed to disclose a confession or confidence made to him in his professional character as spiritual advisor."); People v. Carmona, 82 N.Y.2d 603, 627 N.E.2d 959, 606 N.Y.S.2d 879 (1993) (confidential communication made pursuant to seeking spiritual help is privileged); People v. Schultz, 161 A.D.2d 970, 557 N.Y.S.2d 543 (1990), appeal denied, 564 N.E.2d 683, 563 N.Y.S.2d 73 (privilege not attaching where confidential communication between defendant and clergyman was not spiritual in nature); People v. Drelich, 123 A.D.2d 441, 506 N.Y.S.2d 746 (1986) (same). Contra Ohio Rev.Code Ann. § 2317.02(c) ("The following persons shall not testify in certain respects. . . a clergyman . . . concerning a confession made, or any information confidentially communicated, to him for a religious counseling purpose in his professional character."); Radecki v. Shuckardt, 50 Ohio App.2d 92, 361 N.E.2d 543 (1976) (privilege not applicable to confidential communication not for confessional purposes). Contra Cal.Evid.Code §§ 1030-1034 (statutory privilege protects penitential communication); People v. Edwards, 203 Cal.App.3d 1358, 248 Cal.Rptr. 53 (1988) (privilege not attaching to statements made for purpose of seeking secular counseling rather than for absolution).
Upon assessing the language of § 5943, I find that the only requirement for the information to be privileged is that the communication be made secretly and in confidence while the clergyman is in the course of his duties. Compare Ill.Rev. Stat. ch. 735, § 5/8-803 ("A clergyman . . . shall not be compelled to disclose in any court . . . a confession or admission made to him or her in his or her professional character or as spiritual advisor in the course of the disciplined enjoined . . ., nor be compelled to divulge any information which has been obtained by him or her in such professional character or as such spiritual advisor."); Snyder v. Poplett, 98 Ill.App.3d 359, *274 53 Ill.Dec. 761, 424 N.E.2d 396 (1981), (confidential communication between clergyman and testatrix concerning source of testatrix's assets in will contest was protected from disclosure under clergyman's privilege). If the General Assembly intended the privilege to be limited to communications confessional or counselable in nature, it could have easily incorporated words confining the privilege as such. Instead, the General Assembly painstakingly enacted § 5943 without requiring the privilege to be limited to the aforementioned forms of communication. Contrarily, the majority and our Court's panel decisions in Patterson, supra, and Hutchison, supra, have inserted words into the plain meaning of § 5943 thereby straining the applicability of the privilege. Compare Commonwealth v. Fisher, 485 Pa. 8, 400 A.2d 1284 (1979) (improper for court to add a phrase in its construction of statute where that construction affects scope of statute). Because our Court has essentially re-written § 5943, I find that the works of our legislature have been thwarted. Should change in § 5943 be considered prudent, that change must come from the General Assembly and not from this Court. See Black v. Billy Penn Corp., 72 Pa.Commw. at 430-32, 457 A.2d at 193.
Further, upon evaluating the language of § 5943 in relationship to the language of other sections enacted by the General Assembly which provide for privileged communications, I find § 5943's scope of privileged communications to be distinguishable. The privileges available under 42 Pa.C.S.A. §§ 5942, 5944 and 5945.1, provide clear limitations for the information to be protected from disclosure. Those sections provide express statements as to the recipient's role or function for the communication to be privileged. Section 5942 reads as follows:
(a) General rule.  No person engaged on, connected with, or employed by any newspaper of general circulation or any press association or any radio or television station, or any magazine of general circulation, for the purpose of gathering, procuring, compiling, editing or publishing news, shall be required to disclose the source of any information procured *275 or obtained by such person, in any legal proceeding, trial or investigation before any government unit.
42 Pa.C.S.A. § 5942 (emphasis added). Section 5944 states:
No person who has been licensed . . . to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S.A. § 5944 (emphasis added). Section 5945.1 sets forth definitions clearly explaining the scope of which communications are privileged between the victim and the sexual assault counselor. For example, that section defines the role of the sexual assault counselor as, "[a] person who is engaged in any office, institution or center defined as a rape crisis center under this section . . . whose primary purpose is the rendering of advice, counseling or assistance to victims of sexual assault." 42 Pa.C.S.A. § 5945.1(a).
"Where a statute with respect to one subject contains a given provision, the omission of such provision from a similar statute is significant to show a different intent existed." Richerson v. Jones, 551 F.2d 918 (3d Cir.1977). Compare Commonwealth v. Bigelow, 484 Pa. 476, 399 A.2d 392 (1979) (Supreme Court quotes Richerson, supra, in case where sections within same statute differ in inclusion of provision). Sections 5942, 5943, 5944 and 5945.1 all provide privileges for confidential communication. However, whereas §§ 5942, 5944 and 5945.1 contain provisions or language limiting the scope of which confidential communications are privileged, § 5943 does not. Because of this omission, I find that the General Assembly intended to give broader protection to confidential communication to clergy than determined by our Court in Patterson, supra, and Hutchison, supra.
The Majority herein finds that an in camera review of the documents requested by defendant would properly determine *276 which documents are privileged within the scope of § 5943. However, I am of the opinion that such an inspection would make the clergy privilege an illusory one. An in camera review of documents that are absolutely privileged constitutes error. Commonwealth v. Kennedy, 413 Pa.Super. 95, 111-13, 604 A.2d 1036, 1045 (1992) (en banc), appeal denied, 531 Pa. 638, 611 A.2d 711 (1992) (records of confidential communication between sexual assault victim and psychotherapist are absolutely privileged pursuant to 42 Pa.C.S.A. § 5945.1, and not subject to in camera review). Commonwealth v. Kyle, 367 Pa.Super. 484, 533 A.2d 120 (1987) (psychologist-client privilege established by 42 Pa.C.S.A. § 5944 is absolute and not subject to in camera review). See Commonwealth v. Wilson/Aultman, 529 Pa. 268, 602 A.2d 1290 (1992), cert. denied, ___ U.S. ___, 112 S.Ct. 2952, 119 L.Ed.2d 574 (1992) (privilege codified at 42 Pa.C.S.A. § 5945.1 is absolute); Hatchard v. Westinghouse Broadcasting Company, 516 Pa. 184, 532 A.2d 346 (1987) (although 42 Pa.C.S.A. § 5942 provides absolute privilege of confidential communication between media and informant, protection not attaching to non-confidential material in defamation case). Contrast Commonwealth v. Eck, 413 Pa.Super. 538, 545, 605 A.2d 1248, 1252 (1992) ("[A] privilege which is statutorily enacted, but which is subject to exceptions, is not absolute and access to a criminal defendant may be required."); Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (since 11 P.S. § 2215 (now 23 Pa.C.S.A. § 6339) provided various exceptions to non-disclosure of information, privilege was not absolute and thus information was subject to in camera review).
Section 5943 does not contain language qualifying or excepting the privilege. In light of the foregoing cases, I find that § 5943 affords an absolute privilege to communication within its purview. Having addressed the question of which communications are privileged within the scope of that section, I find that the information sought to be protected from disclosure by the Diocese satisfies the requirements to be privileged communication. Consequently, I conclude that an in camera review of that information would constitute error. "Subjecting *277 the confidential [information] to in camera review by the trial court (as well as the appellate courts and staff members) would ... undermine the public interests supporting the privilege. Simply stated, an absolute privilege of this type and in these circumstances requires absolute confidentiality." Kennedy, 413 Pa.Super. at 115-16, 604 A.2d at 1047. "It should be readily apparent that the general powers of courts do not include the power to order disclosure of materials that the legislature has explicitly directed to be kept confidential." Id. at 116, 604 A.2d at 1047, quoting, Commonwealth v. Moore, 526 Pa. 152, 159, 584 A.2d 936, 940 (1991).
NOTES
[1] Where a previous violent act has been reduced to a conviction, the defendant may use that conviction, regardless of whether he had previous knowledge of it, to prove the violent propensities of the victim and to establish that the victim was the aggressor. See Commonwealth v. Amos, 445 Pa. 297, 284 A.2d 748 (1971).
[2] Section 5943 provides:

No clergyman, priest, rabbi or minister of the gospel of any regularly established church or religious organization, except clergymen or ministers, who are self-ordained or who are members of religious organizations in which members other than the leader thereof are deemed clergymen or ministers, who while in the course of his duties has acquired information from any person secretly and in confidence shall be compelled, or allowed without the consent of such person, to disclose that information in any legal proceeding, trial or investigation before any governmental unit.
42 Pa.C.S.A. § 5943.
[3] The Luddy court also faced the question of whether the order at issue, a discovery order, was appealable. There, the Altoona-Johnstown Diocese requested and received from the trial court a stay of the action and certification for immediate appeal. The Luddy majority found that the order was appealable because it was collateral to the principal action, involved a right too important to be denied review, and could not be postponed until final judgment as the claimed right would be irreparably lost. See Cohen v. Beneficial Industrial Loan Corporation, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); Pugar v. Greco, 483 Pa. 68, 394 A.2d 542 (1978).

Like the Luddy court, we find the Cohen and Pugar rationales applicable to these facts. This appeal, therefore, is properly before us.
[4] The Luddy court also made a series of findings with respect to relevancy and denied several of the discovery requests because they were overbroad and did not pertain to the issues in the case.