# St. Joseph's Lithuanian Roman Catholic Church's Petition.

*Church law—Conflict with law of land—Borrowing money—Parties—Trustees — Discretion of court — Abuse — Acts of April 18, 1853, P. L. 503; April 26, 1855, P. L. 330; May 20, 1913, P. L. 242, and June 7, 1917, P. L. 388.*

1. A church congregation which is shown to be an unincorporated association, is within the express provision of the Revised Price Act of June 7, 1917, P. L. 388, which confers jurisdiction on the court of common pleas to authorize or confirm the borrowing of money on the security of its property.

2. Where a petition is presented to the common pleas by persons representing themselves to be trustees of a church, praying for leave to borrow money by mortgage on the church property for the purpose of necessary repairs, it is immaterial whether the petitioners are in fact trustees, or whether they proceed as a result of the action of the congregation, inasmuch as the court has jurisdiction to appoint trustees to make the loan, and the decree naming them as such trustees, is in effect an appointment.

3. Any member of the congregation may present such a petition.

4. Where a petition is presented under the Act of June 7, 1917, P. L. 388, objection cannot be made that it contravened the Act of

May 20, 1913, P. L. 242, amending the Act of April 26, 1855, P. L. 330, or that it contravened a resolution of a council of the church adopted in 1888.

5. So far as the canons of a church are in conflict with the law of the land, they must yield to the latter.

6. A finding by the court below that a meeting of a church congregation had been properly called after due and timely notice, will not be reversed where there is ample justification for the finding in the evidence.

7. There is no statute that will sustain a decree authorizing the trustees of a church to give their "negotiable or judgment notes, signed by the said trustees as security," for a loan or loans of the church.

8. It seems that where the sentiment of a majority of the congregation of a church is against the relief asked in a petition under the Price Act, and such relief is not proved to be essential to the preservation or best interests of the property in question, it will be an abuse of discretion to grant the prayer of the petitioner.

*Appeal—Question not raised in court below.*

9. A point not raised in the court below will not be considered on appeal.

Argued March 7, 1922. Appeal, No. 266, Jan. T., 1922, by John Zernosky, from decree of C. P. Schuylkill Co., May T., 1921, No. 314, on petition for loan to borrow money, in re Petition of the Trustees of St. Joseph's Lithuanian Roman Catholic Church of Mahanoy City. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Decree modified.

Petition under Act of June 7, 1917, P. L. 388, for leave to borrow money. Before KOCH, J.

The opinion of the Supreme Court states the facts.

Petition allowed. John Zernosky, intervener, appealed.

*Error assigned,* inter alia, was decree, quoting it.

*Daniel C. Donoghue,* with him *James Fitzpatrick, M. J. Ryan* and *John F. Whalen,* for appellant.—A responsive answer must be overcome by relevant and credible

testimony: Stoner v. R. R., 229 Pa. 521; Adrian v. Fink, 226 Pa. 448; Krauczunas v. Hoban, 221 Pa. 213.

If the provisions of the Act of May 20, 1913, P. L. 242, amending the Act of 1855, are applicable to this case then the ruling of the court below was erroneous.

In Baum v. Wicklein, 2 Woodw. 242, a congregational meeting was held invalid because the usual method of notice by the pastor was not followed.

*Arthur L. Shay,* with him *J. O. Adamson, Roscoe R. Koch* and *Otto E. Farquhar,* for appellee.—The practice set out by this statute is by petition and the rules of equity do not govern, hence it was not necessary to file a replication. Nor was this question ever raised in the court below and hence cannot now be raised in this court: Kauffman v. Kauffman, 266 Pa. 270; Miller v. Rubber Co., 268 Pa. 51.

The title of the trustees of St. Joseph's Lithuanian Roman Catholic Church cannot be attacked in this collateral proceeding, but could only be assailed by direct proceeding.

Where a judge exercises the discretion given him under an act of assembly, the higher courts will only reverse for an abuse of discretion: Spiess v. Mooney, 67 Pa. Superior Ct. 9; Lavin v. Garrett, 266 Pa. 323; Cleveland W. Mills Co. v. Myers-Jolesch Co., 266 Pa. 309; Silver v. Edelstein, 266 Pa. 531.

An act which operates retrospectively to take what is by existing law one man's and, without his consent, transfer it to another, with or without compensation, violates the bill of rights: Palairet's App., 67 Pa. 479.

OPINION BY MR. JUSTICE SCHAFFER, March 27, 1922:

This proceding was instituted by seven persons claiming to be trustees of St. Joseph's Lithuanian Roman Catholic Church of Mahanoy City, having for its object the borrowing of a sum of money to repair the church

property. It is opposed by a faction in the congregation which claims to be a majority of the membership.

The Revised Price Act of June 7, 1917, P. L. 388, provides that the court of common pleas shall have jurisdiction with respect to real estate "to authorize or confirm" the mortgaging thereof and that this jurisdiction shall be exercised among other instances (section 2 (a) ), "Where the legal title is held......By corporations of any kind having no capacity to convey, *or by any unincorporated association,*" and on the petition of any party in interest. The act also stipulates that, where a mortgage is authorized, it shall be made by trustees (section 5) "having a present vested interest *or trustees appointed for the purpose* as the court may order." As indicating that the particular person who shall make the mortgage is not of prime importance in the proceeding, it is provided, under certain circumstances, that the court can direct its clerk to execute and deliver it.

The original Price Act of April 18, 1853, P. L. 503, conferred a like power on the court of common pleas to decree the mortgaging of real estate whenever held for or owned by "religious, beneficial or charitable societies or associations, incorporated or unincorporated." In a proceeding for the sale of the property of a church brought under that act (Burton's App., 57 Pa. 213), we said (p. 217) : "The congregation is, therefore, the true owner of the property, while the corporation [composed of the ministers, twelve vestrymen and nine church wardens chosen by the congregation] holds but the bare legal title. As a religious body, it falls within the kindly care of the State......It is not necessary to go into an examination whether the requisite number of communicants voted upon the question of sale. The Act of 1853 authorizes the court to take jurisdiction upon the petition of any trustee or person interested. This was sufficient to call the powers of the court into action. The question of the propriety of the sale did not depend upon the vote of the congregation, but upon the judgment of

the court......If the proceeding derived its effect only
from the action of the congregation, this [that two-thirds
of the congregation had not voted favorably to the sale
under the articles of the church] might be a fatal defect,
but as it arises from the act of the court, and the oper-
ation of law upon a petition by an authorized party, the
want of a two-thirds vote is not material to the vesting
of title in the purchaser." With the statutes and this de-
cision in mind, we will take up the controversy brought
before us on this appeal.

St. Joseph's Lithuanian Roman Catholic Church is an
"unincorporated association," and therefore, within the
express provision of the Revised Price Act conferring
jurisdiction on the court below to authorize or confirm
the borrowing of money on the security of its property.
The appellant, who was permitted to intervene, alleges,
as one of his contentions, that the petitioners are not trus-
tees of the church.

In the petition for authority to borrow the money, it
was recited that the church is greatly in need of repairs,
and without funds to make the improvements necessary
for the preservation of the property. It is not denied by
appellant and those for whom he was acting that repairs
are necessary, the only thing challenged in this respect
is the amount of the expenditures and by whom they
shall be made, whether by the petitioners or others. As
to the necessity for repairs, the court found, "The
church is undoubtedly in need of repairs, and its con-
dition is attended with too much risk for the safety of
the congregation when they want to worship in it to war-
rant the withholding of our approval of the petition for
any longer time." It was set forth in the petition, that
the legal title to the church property, described in it, had
been transferred by order of the court to the trustees of
St. Joseph's Lithuanian Roman Catholic Church in the
place and stead of Archbishop Patrick John Ryan, who
formerly held the title; this statement of the petition
was admitted by the answer filed. It was also averred

that the petitioners were appointed trustees of the church by the court and by the congregation. In the answer filed by the intervener, this fact was denied, but, in exceptions, which had been filed prior to the answer, appellant admitted petitioners were trustees, but alleged they held a mere naked legal title, the entire beneficial interest in the property being in the congregation. By a copy of a resolution claimed to have been passed by the congregation, which was annexed to the answer and incorporated in it, it was admitted the petitioners were at least de facto trustees. The object of this resolution was to remove them from their office. It is not alleged anywhere that other trustees have been chosen. The court found the petitioners are trustees of the church, and, by its decree, authorized and empowered them to "borrow the sum of $20,000, or so much thereof as may be necessary" for the purpose of repairing the property; it also found they "are not merely the inactive or passive holders of the title to the property of the congregation in trust for its use, but they are also active trustees of the congregation invested by it with authority to exercise proper care over said property."

As we view the proceeding, it is immaterial whether the petitioners are trustees of the church, duly recognized as such by a majority of the congregation, or whether they proceeded as a result of majority action by the congregation, for the reason that, the repairs to the church being admittedly necessary, and the congregation without funds to meet the expense, the court could appoint trustees for the purpose of securing the loan, and if the petitioners, as is contended, are not trustees, that in effect is what the court did, by its decree naming them as such, to borrow the money and to execute the necessary obligation. Furthermore, it is admitted the petitioners are members of the congregation, and as the act provides that the jurisdiction conferred by it shall be exercised on the petition of any party in interest, this was sufficient to call the powers of the court into action

(Burton's App., 57 Pa. 213). In St. George's Church Petition, 244 Pa. 410, which was a petition under the Act of April 14, 1828, P. L. 453, for the appointment of a trustee for a church, we said, "It was immaterial whether there had been a congregational meeting authorizing the petition or not, as the act of assembly empowers any person interested in the trust to present the petition for the appointment of trustees." We, therefore, conclude the court properly assumed jurisdiction on the petition.

The court disposed of the question whether the petitioners are trustees, on petition and answer and without supplementary proof. Whether, because of the denial of the answer that they were trustees, and, in the absence of a replication, petitioners were bound to support the averments of their petition in this respect with evidence, was a point not raised in the court below and therefore cannot be raised here (Kauffman v. Kauffman, 266 Pa. 270); and moreover, for the reasons already given, it is an immaterial matter.

Another objection raised is, that the provisions of the Act of May 20, 1913, P. L. 242, amending the Act of April 26, 1855, P. L. 330, apply to this property, notwithstanding the fact that it was acquired prior to the passage of the Act of 1913, and that the act speaks of property "hereafter" acquired; and a further objection is that because of a regulation adopted by a council of the church in 1888, providing "Except for ordinary outlays, it shall be unlawful for trustees to expend a sum of money exceeding three hundred dollars for any special purpose unless the bishop gives his assent thereto in writing," that petitioners are without authority to borrow the money or make the repairs. These two objections are not relevant, because the proceeding is being conducted under an act passed in 1917, which unquestionably conferred jurisdiction on the court below to make the order it did; as the Act of 1913 and the regulations of the church could have no effect upon this later enactment, these objections fall by the wayside.. "So far as the canons of the church are in conflict with the law

of the land, they must yield to the latter": Ryan v. Dunzilla, 239 Pa. 486. It will be observed that the regulation adopted by the council of the church excepts "ordinary outlays" from the necessity of approval by the bishop. It may well be argued that repairs are "ordinary outlays" and therefore even under the resolution itself, do not require his approval. It is certain, however, that the raising of money by mortgage on church property is within the direct purview of the Price Act.

The question was also raised that the meeting of the congregation which directed petitioners to begin this proceeding was not legally called, but this was disposed of adversely to the appellant by the finding of the court, which had ample justification in the evidence, that it was properly called after due and timely notice. Of course, where it is made to appear that the sentiment of the majority of real owners of a church property,—the congregation,—is against the relief asked in a petition under the Price Act, and such relief is not proved to be essential to the preservation or best interests of the property in question, it would be an abuse of discretion to grant the prayer of the petition; but no such condition of affairs appears in the present case.

One other matter requires consideration. The decree of the court below authorizes the trustees to give their "negotiable or judgment note or notes, signed by said trustees......as security for such loan or loans." There is no warrant in the act for the making of such obligations; the only form of security fixed by it is a mortgage; this was not called to the attention of the court below and evidently was inadvertently overlooked by it.

The assignments of error are all overruled, the decree is affirmed in all respects, save that in which it authorizes the giving of a negotiable or judgment note or notes; to correct this mistake, the record is remitted to the court below with directions to mould its decree to require the giving of a mortgage instead of a note or notes; costs to be paid by appellant.

See also the next case.