Father Bernard R. PAGANO, Plaintiff,

v.

Detective Timothy HADLEY, et al., Defendants.

Civ. A. No. 81–381–WKS.

United States District Court,
D. Delaware.

Jan. 20, 1984.

John T. Owens, Wilmington, Del., Alfred R. Fabricant, Shea & Gould, New York City, for plaintiff.

H. Murray Sawyer, Jr., Roger A. Akin, H. Murray Sawyer, Jr., P.A., Wilmington, Del., for defendants.

James P. Collins, Healy & Collins, Wilmington, Del., for Diocese of Wilmington.

## OPINION

STAPLETON, Chief Judge:

Father Pagano, the plaintiff in this civil rights-defamation action, is a Catholic priest. The defendants are law enforcement officers who are alleged, *inter alia,* to have damaged plaintiff's reputation by falsely and maliciously accusing him of criminal activity. The defendants served a subpoena *duces tecum* directed to "Most

Rev. Thomas J. Mardaga and/or Records Custodian Catholic Diocese of Wilmington" which seeks fifteen categories of documents relating to Father Pagano. Bishop Mardaga has agreed to produce the documents sought in Item 3 of the subpoena but has moved to quash the subpoena to the extent it requires the production of other documents.

In support of his motion, Bishop Mardaga argues that the documents are privileged under Rule 505 of the Delaware Uniform Rules of Evidence, that they are protected by the "free exercise" clause of the First Amendment and that the subpoena is overbroad and burdensome. I agree with him that Items 2 and 7 are unreasonable and oppressive in scope within the meaning of Federal Rule of Civil Procedure 45(b). I also conclude that he should have an additional opportunity to assert Father Pagano's priest-penitent privilege. I cannot however, sanction, his withholding of documents which are within the scope of Items 1, 4–6, and 8–15 of the subpoena and which do not qualify for the privilege under Rule 505.

■ The production of documents for use in connection with litigation in this Court is governed by the Federal Rules of Civil Procedure. See Rules 45 and 26. It is my duty to enforce requests for production which are consistent with those rules unless the things sought are privileged or are constitutionally protected. Except to the extent already noted, the defendants' subpoena is consistent with the Federal Rules of Civil Procedure. Father Pagano has alleged that his reputation as a priest was significantly better before the alleged defamation than it was after. The defendants are entitled to a fair opportunity to defend against this claim. This includes access through discovery to evidence which would be admissible on the issue of Father Pagano's reputation as a priest or which might lead to the discovery of evidence which would be so admissible. Unprivileged documents in Father Pagano's personnel file pertaining to his performance as a priest clearly come within the scope of permissible discovery. See Fed.R.Evid. 405; Fed.R.Civ.P. 26(b)(1).

■ In civil actions, with respect to a claim as to which State law supplies the rule of decision, the privilege of a person is determined in accordance with State law. Fed.R.Evid. 501. Under Delaware Rule of Evidence 505, Father Pagano has a privilege with respect to any communication which was (1) confidential, (2) made by him, (3) to a clergyman, and (4) disclosed to the clergyman "in his professional character as a spiritual advisor." Rule 505(b). The clergyman may claim this privilege on behalf of Father Pagano assuming it has not been waived by him. Rule 505(c). Bishop Mardaga's position that all documents sought by the defendants' subpoena come within this privilege because of the special relationship between a Bishop and his priests clearly cannot be sustained, however. Based upon the wording of the subpoena, it is unlikely, for example, that many of the documents are communications *from* Father Pagano. On the other hand, it well may be that some documents coming within the scope of the subpoena are privileged under Rule 505. Accordingly, the Bishop will be given five days from the date of this opinion to identify any document which meets the four qualifications indicated above. Without disclosing the content of the communication, the description shall be sufficient to affirm the existence of those qualifications.

■ I conclude that Father Pagano did not waive his privilege under Rule 505 by filing this lawsuit. Delaware Rule of Evidence 510 codifies the usual rule relating to privilege waiver:

A person upon whom these rules confer a privilege against disclosure waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter. This rule does not apply if the disclosure itself is privileged.

Defendants do not suggest that Father Pagano has waived his privilege under this rule. Rather they assert that Rule 510 is

not exclusive and that it would be fundamentally unfair to permit Father Pagano to assert a claim for damaged reputation and to then allow him to withhold information which might conceivably be helpful to the defense. I assume for present purposes that the Delaware Courts would construe Rule 510 as non-exclusive. Fundamental fairness does not require, however, that anyone filing a defamation claim be deemed to have waived his or her priest-penitent privilege. It is true that something confessed to a priest in confidence might conceivably lead to evidence admissible on the reputation issue in a defamation case. Nevertheless, it will be the rare case indeed where evidence regarding public reputation is not more readily available from other sources. The policy considerations behind the privilege are sufficiently important that a waiver of one's priest-penitent privilege should not be a prerequisite to litigating a defamation claim.

 Finally, I conclude that the Bishop's innovative First Amendment argument cannot be sustained. I have found only one other case in which a similar claim has been made. In *In re Murtha,* 115 N.J.Super. 380, 279 A.2d 889 (App.Div.1971), the Court held that requiring a nun to disclose an unprivileged communication to her by a parishioner and former student did not deny to her "her right to a free exercise of her religion" under the First Amendment. While the facts in that case were materially different, it is equally true that producing the unprivileged documents in Father Pagano's personnel file will not interfere with the Bishop's right to believe as he chooses and to engage in the religious observances of his faith. While the Bishop's counsel correctly points out that the courts have been careful to avoid becoming entangled in the affairs of the Church, the production of existing documents needed for civil litigation in response to a subpoena simply does not involve any entanglement. The cases relied upon by the Bishop were distinguished by Justice Rehnquist in *General Council on*

Fin. Etc. v. Superior Court, 439 U.S. 1369, 1372–73, 99 S.Ct. 35, 38, 58 L.Ed.2d 77 (1978):

> In my view, applicant plainly is wrong when it asserts that the First and Fourteenth Amendments prevent a civil court from independently examining, and making the ultimate decision regarding, the structure and actual operation of a hierarchical church and its constituent units in an action such as this. There are constitutional limitations on the extent to which a civil court may inquire into and determine matters of ecclesiastical cognizance and polity in adjudicating intrachurch disputes. See *Serbian Eastern Orthodox Diocese v. Milivojevich* [426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976)]. But this Court never has suggested that those constraints similarly apply outside the context of such intraorganization disputes. Thus, *Serbian Eastern Orthodox Diocese* and the other cases cited by applicant are not in point. Those cases are premised on a perceived danger that in resolving intrachurch disputes the State will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs. 426 U.S., at 709–710 [96 S.Ct., at 2380–2381]. Such considerations are not applicable to purely secular disputes between third parties and a particular defendant, albeit a religious affiliated organization, . . .

Information in the possession of the Church has always been subject to civil process. This is precisely why states like Delaware have adopted statutes creating a priest-penitent privilege.[1] If the Bishop were right about the protection afforded by the Constitution, there would be no need for such a privilege. Because no such protection is afforded by the free exercise clause, I can sustain the Bishop's position only with respect to the narrow category of documents protected by Delaware Rule of Evidence 505.

---

1. The common law recognized no priest-penitent privilege. 8 *Wigmore, Evidence* (3d ed. 1961).

An Order will be entered directing the custodian of the records of the Diocese to produce all documents coming within the scope of Items 1, 4–6, and 8–15 of the subpoena which are not shown within five days to be privileged.