**In re CONTEMPORARY MISSION, INC., Debtor.**

**Bankruptcy No. 5–82–00915.**

United States Bankruptcy Court, D. Connecticut.

Dec. 12, 1984.

Ira B. Charmoy, Levin & Charmoy, Bridgeport, Conn., for petitioning creditors.

William D. O'Reilly, Windham City, N.H., for debtor.

## MEMORANDUM AND ORDER

ALAN H.W. SHIFF, Bankruptcy Judge.

### BACKGROUND

The petitioning creditors filed an involuntary petition in bankruptcy against Contemporary Mission, Inc. (CMI) on August 6, 1982. CMI filed an answer contending that it is not subject to an involuntary petition because it is not a moneyed, business, or commercial corporation.[1] Notwithstanding the Certificate of Amendment of a General Not For Profit Corporation dated September 30, 1960 and Certificate of Corporate Good Standing dated August 26, 1982 issued by the State of Missouri, and the Tax Exemption Permit dated January 18, 1974 issued by the State of Connecticut,[2] the petitioning creditors assert that CMI is in fact a moneyed, business, or commercial corporation and is subject to involuntary proceedings.

On April 12, 1983, the petitioning creditors brought a motion to compel CMI to answer various interrogatories which CMI had objected to. The motion was heard on May 17, 1983, and on May 18, 1983, an order entered which sustained certain objections, overruled others, and reserved decision on the remainder, pending receipt of an order from the United States Court of Claims, *see discussion infra.* At issue here are those interrogatories upon which the court reserved decision.

The interrogatories still in dispute are as follows:

5. If the Defendant [CMI] claims to have a congregation or members other than the individuals named ..., state their names and addresses.

6. If the Defendant [CMI] claims to hold regular religious services, state the times and days of the week that such services are held.

7. If the answer to paragraph 6 above is answered by other than "not applicable," state whether the Defendant [CMI] advertises said services and in what publication.

8. State whether any of the officers or directors of the Defendant [CMI] claim to belong to any recognized church and/or religion, and, if so, the name and address of their immediate superior.

9. If the answer to paragraph 8 above is affirmative, state the name of said church and religion.

19. (a) With respect to the Internal Revenue Service, state whether revocation of tax exemption was appealed and if so, whether said case has been settled.

(b) Identify all documents concerning said tax revocation.

20. State the names and addresses of the individuals representing the Internal Revenue Service with whom the Debtor's [CMI] attorneys have been negotiating.

### DISCUSSION

Bankruptcy Rule 1018 directs that Rule 7026 is applicable to all proceedings related to a contested involuntary proceeding and Rule 7026 directs that F.R.Civ.P. 26 is applicable. Regarding the permissible scope of discovery, F.R.Civ.P. 26(b) provides in pertinent part:

Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any dis-

1. Section 303(a) of title 11 provides:
   An involuntary case may be commenced only under Chapter 7 or 11 of this title, and only against a person, except a farmer or corporation that is not a moneyed, business, or commercial corporation, that may be a

debtor under the chapter under which such case is commenced.

2. Copies of the certificates were appended to CMI's answer.

coverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

### I

### INTERROGATORIES 5 THROUGH 9

CMI objects to interrogatories 5 through 9 on the grounds that they are irrelevant, vague, ambiguous, and violative of CMI's "First Amendment rights." Interrogatory 5 is specifically objected to because any answer "would violate the confidentiality privilege established in *Contemporary Mission, Inc. v. The United States,* United State [sic] Court of Claims, No. 557–79T."

Relative to the privilege allegedly established by the United States Court of Claims, CMI was requested by this court to produce a copy of the opinion. CMI has produced two Pretrial Conference Memoranda dated January 29, 1981 and May 6, 1981, neither of which establish a privilege. Moreover, the May 6, 1981 Memorandum notes at p. 2:

Counsel [for CMI] has instructed CMI's priests not to respond to questions relative to the extent of sacerdotal functions [which] were performed in the year in dispute. Counsel were reminded the January 29, 1981 memorandum specifically provided that the depositions of the priests could include the "nature and extent of any priestly functions performed by plaintiff's [CMI's] members." ... [and] the January 29, 1981 memorandum would not be amended in this regard.

### A.

### OBJECTIONS BASED ON RELEVANCY, VAGUENESS, AND AMBIGUITY

■ Although the fundamental question is not whether CMI is a "religious organi-

zation" but rather whether it is a moneyed, business or commercial corporation, CMI appears to contend that the two are necessarily synonymous. Indeed, in its answer to the involuntary petition, CMI included a second affirmative defense that "Mission, a religious organization, is specifically exempted from the provisions of 11 U.S.C. § 303." Thus, having asserted the defense that it is a religious organization within the purview of Code § 303(a),[3] CMI's objection to these interrogatories on the basis of relevancy is without merit and is overruled. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); *Hickman v. Taylor,* 329 U.S. 495 (1947). In *Oppenheimer Fund, Inc.,* the court explained:

The key phrase in [F.R.Civ.P. 26(b)(1)]—"relevant to the subject matter involved in the pending action"—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.

437 U.S. at 351, 98 S.Ct. at 2389.

CMI's objection based on vagueness and indefiniteness of such terms as "congregation or members," "regular religious services," and "advertise" is overruled. Those terms are sufficiently specific to elicit accurate responses.

### B.

### OBJECTION BASED UPON THE FIRST AMENDMENT

■ CMI argues that any response to the petitioning creditors' inquiry into its religiousness is privileged because the inquiry interferes with the free exercise of

---

**3.** While the language of section 303 does not specifically exempt religious organizations, the legislative history of the Bankruptcy Reform Act of 1978, P.L. 95–598, relative to involuntary cases states in pertinent part:

Eleemosynary institutions, such as churches, schools, and charitable organizations and

foundations ... are exempt from involuntary bankruptcy.
Senate Report No. 95–989, p. 32, July 14, 1978, U.S.Code Cong. & Admin.News, 1978, p. 5787, 5818.

CMI's religion. There is no merit to that contention.

■ The term "privilege" in Fed.R. Civ.P. 26(b) corresponds to the concept of privilege as developed in the law of evidence. *United States v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 S.Ct. 727 (1953), 4 J. Moore, *Moore's Federal Practice,* Para 26.-60[1] (2d ed. 1984). The burden of establishing the existence of a privilege rests with the party asserting it. *In re Horowitz,* 482 F.2d 72 (2d Cir.1973), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). CMI cites *Universal Life Church, Inc. v. United States,* 372 F.Supp. 770 (E.D.Cal.1974), which supports the proposition that the practices of a newly organized religion are not to be compared with those of more established religions. But it does not follow that discovery must be denied once a party to civil litigation alleges that it is a religious organization. If that were the case, any group could avoid discovery procedures by merely claiming to be a religious organization.

■ Under F.R.Ev. 501, this court, in the context of this proceeding, must look to the Constitution to test the legal sufficiency of CMI's First Amendment argument. In that regard, it should be observed that "privilege, in contrast to relevancy is to be construed narrowly." 4 J. Moore, *Moore's Federal Practice,* para 26.60[1] at 26–188 (2d ed. 1984); *see In re Sealed Case,* 676 F.2d 793 (D.C.Cir.1982). Under that analysis, CMI's "First Amendment rights" claim does not assert a cognizable privilege. *Pagano v. Hadley,* 100 F.R.D. 758 (D.Del. 1984). In *United Methodist Council v. Superior Court,* 439 U.S. 1369, 99 S.Ct. 35, 58 L.Ed.2d 63 (1978), cited in *Pagano* at p. 761, Justice Renquist explained:

> In my view, applicant is plainly wrong when it asserts that the First and Fourteenth Amendments prevent a civil court from independently examining, and making the ultimate decision regarding, the structure and actual operation of a hierarchical church and its constituent units.... There are constitutional limitations on the extent to which a civil court may inquire into and determine matters of ecclesiastical cognizance and polity in adjudicating intrachurch disputes. But this Court never has suggested that those constraints similarly apply outside the context of such intraorganization disputes.

439 U.S. at 1372–73, 99 S.Ct. at 38.

■ While a priest-penitent privilege is recognized by federal common law, *see Trammel v. United States,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), CMI has neither specifically alleged such a privilege nor argued that it is applicable to a corporation. Accordingly, CMI's objections to interrogatories 5 through 9 are overruled.

## II

### INTERROGATORIES 19 AND 20

CMI objects to interrogatories 19 and 20 on the grounds that any settlement negotiations regarding an appeal of the revocation of CMI's federal tax exemption are confidential and that identification of documents and names and addresses of individuals representing the Internal Revenue Service are not discoverable because such information is privileged. To the extent that a privilege exists, F.R.Ev. 408 would be determinative. F.R.Ev. 408 provides:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

CMI's objections with respect to interrogatories 19 and 20 are overruled. The petitioning creditors have not requested disclosure of privileged communications nor at this stage of this proceeding may it be determined that the petitioning creditors intend to offer the information for impermissible purposes. Moreover, even if the information sought were clearly inadmissible, it is discoverable if reasonably calculated to lead to the discovery of admissible evidence. *See* F.R.Civ.P. 26(b)(1), *supra.*

### ORDER

The information sought by the petitioning creditors is relevant and is not privileged. To the extent that CMI has not already answered interrogatories 5 through 9, 19, and 20, it shall now do so.

It is So Ordered.