606 A.2d 905

Samuel C. HUTCHISON

v.

Father Francis LUDDY, Bishop James Hogan, Monsignor Thomas Madden, Monsignor Roy F. Kline, Monsignor Paul Panza, Monsignor Ignatius Wadas, Diocese of Altoona–Johnstown, St. Mary's Catholic Church, Cardinal John Krol, and the Arch–Diocese of Philadelphia.

Appeal of Bishop James HOGAN, Monsignor Thomas Madden, Monsignor Roy F. Kline, Monsignor Paul Panza, Monsignor Ignatius Wadas, Diocese of Altoona–Johnstown, St. Mary's Catholic Church.

Superior Court of Pennsylvania.

Argued Aug. 21, 1991.

Filed Feb. 24, 1992.

Reargument Denied May 1, 1992.

Maria Zulick, Pittsburgh, for appellants.

Richard M. Serbin, Altoona, for appellee Hutchison.

Before WIEAND, CIRILLO and JOHNSON, JJ.

WIEAND, Judge:

The issue of first impression in this appeal is whether a church can avoid the discovery of relevant information in a civil action against the church by putting it in a place which is designated by canon law as a "secret archive." After examining the relationship between canon and civil law, the statutory clergyman's privilege, and concerns raised by the First Amendment of the Constitution of the United States,

we conclude that the trial court properly permitted discovery of relevant, non-privileged information in the church's possession.

On October 26, 1988, Samuel C. Hutchison commenced a civil action in Somerset County to recover damages against the Reverend Father Francis Luddy for alleged pedophilic sex acts performed while Father Luddy was serving a pastorate in the Borough of Windber, Somerset County. Later, on December 29, 1989, an amended complaint was filed, alleging that Bishop James Hogan, Monsignor Thomas Madden, Monsignor Roy F. Kline, Monsignor Paul Panza, Monsignor Ignatius Wadas, Diocese of Altoona–Johnstown and St. Mary's Catholic Church ("Altoona–Johnstown parties") had negligently hired, or retained Father Luddy and had assigned him to a pastorate when they knew or should have known of his pedophilic tendencies.

As part of pre-trial discovery, Hutchison served the Altoona–Johnstown parties with a Request For Production of Documents for Inspection. The request was, inter alia, for the production of documents pertaining to alleged sexual misconduct with minor male children by priests assigned to the Altoona–Johnstown Diocese for the years 1972 through 1987 (Request for Production No. 9); documents pertaining to reports of sexual misconduct by priests assigned to the Altoona–Johnstown Diocese for the years 1972 through 1987 (Request for Production No. 15); the complete personnel files of defendant Father Luddy (Request for Production No. 11) and other specified priests (Requests for Production Nos. 35, 36 and 36 [37]); and documents pertaining to allegations of sexual involvement with minor male children by specified priests (Requests for Production Nos. 30, 31 and 32). Hutchison also requested documents kept by the Diocese of Altoona–Johnstown in a file maintained pursuant to Canon 489 of the Code of Canon Law of the Catholic Church. More specifically, Hutchison asked for:

documents in the Canon 489 file which in any way pertain to Father Francis Luddy, for the years 1974 through the present. (Request for Production No. 27).

documents in the Canon 489 file which pertain to any alleged and/or actual reports of sexual involvement with minor male children by priests in the Altoona–Johnstown Diocese, for the years 1974 through the present. (Request for Production No. 28).

documents in the Canon 489 file relating to a specifically named priest. (First Supplemental Request for Production No. 9).

In response to the request for a complete copy of Father Luddy's personnel files, the Altoona–Johnstown parties averred that the documents were not discoverable because "they would be contained in secret archive files as maintained by the diocese pursuant to Canons 489 and 490 of the Code of Canon Law...." The Altoona–Johnstown parties refused to produce any documents in the "secret archive" concerning Father Luddy and other identified priests for the same reason.

When the requested documents were not forthcoming, Hutchison filed a motion requesting the trial court to order compliance with Hutchison's requests for the production of documents. A countervailing motion was filed by the Altoona–Johnstown parties, in which they requested a protective order to prevent the discovery of documents because of defects in the requests and because the documents sought were privileged.

In ruling on these opposing motions, the trial court agreed with the Altoona–Johnstown parties that the requests for production were unreasonably broad in scope and sought to discover matters not relevant to the action. Thus, the court found no legitimate reason for requiring revelation of complete personnel files and limited discovery to incidents of actual or alleged sexual misconduct by priests with minor, male children and information pertaining to the assignment and transfer of priests. The trial court also concluded that the time period referred to in Hutchison's requests was too broad; and, therefore, restricted the production of documents to the period between 1972 and 1985. Finally and most significantly for purposes

of this appeal, the trial court denied Altoona–Johnstown's request for a protective order regarding materials in the Canon 489 file. However, the trial court's order granted leave to the Altoona–Johnstown parties to seek further protective orders or to present the documents for in camera review before disclosure to the adverse party.

Both Hutchison and the Altoona–Johnstown parties filed motions for reconsideration, and the Altoona–Johnstown parties requested an amendment certifying the court's order for immediate appeal, coupled with an interim stay or supersedeas. The trial court refused the motion for reconsideration by the Altoona–Johnstown parties but granted their requests for a stay and certification of the case for immediate appeal. Thereafter, the Altoona–Johnstown parties filed in the Superior Court an immediate appeal and also a petition for permission to appeal from an interlocutory order. Hutchison filed a motion to quash the appeal. The Superior Court denied the motion to quash the Altoona–Johnstown parties' appeal on the basis of the rule announced in *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) and followed by the Supreme Court of Pennsylvania in *Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978). In view of this denial, the petition for leave of court to file an appeal from an interlocutory order was dismissed as moot.[1]

In *Cohen v. Beneficial Industrial Loan Corporation, supra,* the Supreme Court of the United States held that orders collateral to the principal action were appealable if the claimed right was too important to be denied review and the question to be presented was such that, if review were to be postponed until final judgment in the principal action, the claimed right would be irreparably lost. This is also the law in Pennsylvania. *Pugar v. Greco, supra.* The

1. The Superior Court utilized a similar rationale in reaching the merits in *Hutchison v. Luddy*, 398 Pa.Super. 505, 581 A.2d 578 (1990). The Supreme Court subsequently reversed and held that the order in that case was interlocutory and non-appealable. The order from which the appeal had been filed in that case, however, had merely denied a motion to seal the record.

order from which the instant appeal was taken does not decide the principal action but is collateral thereto. In effect, it directs the Roman Catholic Church to produce for discovery certain records which the Church deems secret. The right of confidentiality claimed by the Church is too important to be denied review; and to postpone review until final judgment in the main action would cause the claimed right to be irreparably lost. Therefore, we deem the present appeal proper and will consider the merits of the claim of confidentiality asserted by the Church in opposition to plaintiff's several requests for discovery.[2]

It is the responsibility of the trial court to "oversee discovery between the parties and therefore it is within that court's discretion to determine the appropriate measure necessary to insure adequate and prompt discovering of matters allowed by the Rules of Civil Procedure." *Stern v. Vic Snyder, Inc.,* 325 Pa.Super. 423, 436, 473 A.2d 139, 146 (1984). With regard to requests for protective orders, the Commonwealth Court has appropriately observed:

> There are no hard-and-fast rules as to how a motion for a protective order is to be determined by the court. Whether to grant or deny the motion, and what kind or kinds of protective orders to issue are matters that lie within the sound judicial discretion of the court, and the court's determination as to these matters will not be disturbed unless that discretion has been abused.

*Allegheny West Civic Council, Inc. v. City Council of the City of Pittsburgh,* 86 Pa.Commw. 308, 314, 484 A.2d 863, 866 (1984). See also: *Kepple v. Fairman Drilling Co.,* 380 Pa.Super. 52, 551 A.2d 226 (1988), *appeal denied,* 522 Pa. 604, 562 A.2d 827 (1989); *Leonard v. Leonard,* 353 Pa.Super. 604, 510 A.2d 827 (1986).

Canon 489 of the law of the Roman Catholic Church dictates: "There is to be a secret archive ... or at least a

---

**2.** To quash the appeal without prejudice to appellants' right to once again petition the Court to hear an interlocutory appeal would serve no purpose other than delay; and, therefore, we have rejected such an approach.

safe or file in the ordinary archive, completely closed and locked and which cannot be removed from the place," for "documents to be kept [and] protected most securely." Canon 490 states further that "[o]nly the bishop" governing the diocese may possess the secret archive's key and that "documents are not to be removed from the secret archive or safe." Appellants contend that the trial court's discovery is violative of these provisions of canon law.

The law pertaining to discovery in civil actions appears at Pa.R.C.P. 4001 et seq. In general, "a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ... including the existence, description, nature, content, custody, condition and location of any books, documents, or other tangible things...."

■ Insofar as the canons of the Church are in conflict with the law of the land, the canons must yield. *St. Joseph's Lithuanian Roman Catholic Church's Petition*, 273 Pa. 486, 492–493, 117 A. 216, 218 (1922). Accord: *St. Peter's Roman Catholic Parish v. Urban Redevelopment Authority of Pittsburgh*, 394 Pa. 194, 198, 146 A.2d 724, 726 (1958). Here, it is the Pennsylvania rules of discovery which are controlling. Merely because Canon 489 is controlling in the internal operation of the affairs of the Church does not mean that it permits evidence pertaining to sexual molestation of children by priests to be secreted and shielded from discovery which is otherwise proper.

> Conscientious scruples have not, in the course of the long struggle for religious toleration, relieved the individual from obedience to a general law not aimed at the promotion or restriction of religious beliefs. The mere possession of religious convictions which contradict the relevant concerns of a political society does not relieve the citizen from the discharge of political responsibilities.

*Minersville School District v. Gobitis*, 310 U.S. 586, 594–595, 60 S.Ct. 1010, 1013, 84 L.Ed. 1375, 1379 (1940) (footnote omitted).

■ An application of Pa.R.C.P. 4001 et seq. requires that a determination be made as to the relevancy of the information sought and whether the information is privileged. The trial court determined, and we agree, that evidence in the files of the Altoona–Johnstown parties pertaining to Father Luddy's alleged sexual molestation of Hutchison is relevant. Similarly, the circumstances involved in the handling of Father Luddy and other named priests, if any, who were known to be pedophilic, would be relevant to plaintiff's claim that the Altoona–Johnstown parties were negligent in concealing such tendencies and that this contributed causally to his own molestation.

The record before this Court does not suggest that the information sought to be discovered is privileged. "Evidentiary privileges are not favored; ... exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth." *Herbert v. Lando,* 441 U.S. 153, 175, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115, 133 (1979), quoting *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1065 (1974).

■ Pennsylvania statutory law recognizes a privilege for communications made in confidence to a clergyman. The statute, appearing at 42 Pa.C.S. § 5943, provides in pertinent part as follows:

No clergyman, priest, rabbi or minister of the gospel of any regularly established church or religious organization, ... who while in the course of his duties has acquired information from any person secretly and in confidence shall be compelled, or allowed without consent of such person, to disclose that information in any legal proceeding, trial or investigation before any government unit.

This privilege protects "priest-penitent" communications; it does not protect information regarding the manner in which a religious institution conducts its affairs or information acquired by a church as a result of independent investiga-

tions not involving confidential communications between priest and penitent.

In *Fahlfeder v. Com., Pennsylvania Board of Probation*, 80 Pa.Commw. 86, 470 A.2d 1130 (1984), a parolee alleged that testimony by a clergyman from the parolee's rehabilitation residence was in violation of the statutory privilege at Section 5943. In rejecting this argument, the court stated:

> Clearly, this provision of the Code does not prohibit *all* testimony by members of the clergy. Rather, it is limited to information told in confidence to them in their role as confessor or counselor. Petitioner established nothing in the record here indicating a confessor/penitent relationship with [the clergyman], and the record does not indicate that the admissions by Petitioner were offered in confidence. . . . Without a demonstration that his role was that of confessor or confidant, the admissions sought to be excluded did not fall within the protection of Section 5943.

*Id.*, 80 Pa.Commw. at 90, 470 A.2d at 1133. (emphasis in original).

The applicability of § 5943 was also at issue in *Commonwealth v. Patterson*, 392 Pa.Super. 331, 572 A.2d 1258 (1990). There, the defendant argued that communications with a clergyman in the course of his duties were presumed to be privileged and that there was no requirement that they be confessional or penitent in nature. The court held, consistently with *Fahlfeder*, as follows:

> [O]ur legislature did not intend a *per se* privilege for any communication to a clergym[a]n based on his status. We therefore look to the circumstances to determine whether appellant's statements were made in secrecy and confidence to a clergyman in the course of his duties. . . . Appellant never sought [the clergyman] in a confessional role; further there was no evidence that [the clergyman] was acting in any capacity other than that of counselor. Thus, the statements were not motivated by religious considerations or in order to seek the forgiveness of God. Accordingly, they were not made to [the clergyman] in

148

the course of his duties as a minister.... [T]here is no basis to conclude that appellant's statements were made confidentially or for religious, penitent purposes. Therefore, we conclude that section 5943 does not apply.

*Id.*, 392 Pa.Superior Ct. at 343–344, 572 A.2d at 1265.

■ Courts of other jurisdictions have similarly limited the privilege to situations in which it has been demonstrated that the communication was made in the context of a confession or spiritual matter. The mere fact that a communication was made to a clergyman or documentation was transmitted to a clergyman is insufficient in itself to invoke the privilege. See: *United States v. Gordon*, 655 F.2d 478 (2d Cir.1981) (testimony of priest admissible where communication related to business relationships, not spiritual matters); *United States v. Wells*, 446 F.2d 2 (2d Cir.1971) (letter to priest not privileged in absence of evidence that purpose was to obtain religious or other counsel, advice, solace, absolution or ministration); *Keenan v. Gigante*, 47 N.Y.2d 160, 417 N.Y.S.2d 226, 390 N.E.2d 1151 (1979) (privilege seeks to protect only communications made to a clergyman in his spiritual capacity).

In the instant case, the trial court applied the statutory privilege consistently with the decided cases. The court determined that the Altoona–Johnstown parties had failed to show

in what manner the requested material was revealed or given to church representatives, or, for that matter, whether any of the requested information was disclosed to a priest or clergyman at all. Defendants have not shown that the request would cause disclosure of any information given by anyone, or to anyone, in confidence. We conclude that defendants have not met their burden of showing that any of the requested material is confidential within the meaning of Section 5943. We, therefore, reject defendants' blanket assertion of privilege based on Section 5943 of the Judicial Code.

We agree that this was a correct interpretation of the statutory privilege. We observe, moreover, that the trial

court's order has preserved the right to seek a further protective order in the event that in camera review of the church's file discloses privileged material. The trial court did not err, when on the record established in this case, it refused to find that the information sought to be discovered was privileged.

Appellants argue, however, that the Canon 489 file is a religious practice, constitutionally protected from a state's discovery laws. In support of this argument, appellant cites and relies upon decisions which have held that a state may not interfere with a party's religious beliefs. See, e.g. *Thomas v. Review Board*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981) (Jehovah's Witness entitled to state unemployment compensation benefits); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (state law requiring school attendance for all students under the age of sixteen held invalid as applied to Amish children); *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (Sabbatarian employee who declined to work on holy day of Saturday eligible for state unemployment compensation). Compare: *Employment Division, Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990).

These decisions, however, have no applicability to the case sub judice. Neither the discovery rules adopted by the Pennsylvania Supreme Court nor the order entered by the trial court in this case interferes with the free exercise of religion.

Free exercise of religion, as it is encapsulated in the First Amendment, embraces two concepts—freedom to believe and freedom to act. The first is absolute, but the second remains subject to regulation for the protection of society. *Cantwell v. Connecticut*, 310 U.S. 296, 303–04, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). We are not concerned here with the former; Holmes and other congregation members remain unimpeded in the cerebral sphere. The sole issue is whether the Church may refrain from

producing documents under a narrowed court order. There is no doubt that this constitutes conduct.

*United States v. Holmes,* 614 F.2d 985, 989 (5th Cir.1980). Decisions expressing judicial reluctance to become entangled in internal church conflicts are also inapplicable.[3]

Those cases are premised on a perceived danger that in resolving intrachurch disputes the State will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs. 426 U.S., at 709–710, 96 S.Ct., at 2380–2381. Such considerations are not applicable to purely secular disputes between third parties and a particular defendant, albeit a religious affiliated organization, in which fraud, breach of contract, and statutory violations are alleged.

*General Council on Finance and Administration of the United Methodist Church v. Superior Court of California,* 439 U.S. 1369, 1373, 99 S.Ct. 35, 38, 58 L.Ed.2d 77, 81–82 (1978) (Rehnquist, J.).

The instant case is more akin to *Ambassador College v. Geotzke,* 675 F.2d 662 (5th Cir.1982), where a challenge was made to the validity of a gift to Ambassador College on grounds of fraud and undue influence. During the discovery phase of the litigation, Ambassador College, an entity endowed and supported by the Worldwide Church of God, refused on First Amendment grounds to respond to many of plaintiff's interrogatories and requests for the production of documents. The trial court entered an order compelling Ambassador College to answer plaintiff's requests. Ambassador College sought a declaratory judgment in federal court, under 42 U.S.C. § 1983, that the trial court's order was an unconstitutional infringement upon its

3. The cases cited by appellants include the following: *The Serbian Eastern Orthodox Diocese for the United States of America and Canada v. Milivojevich,* 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969); *Kedroff v. St. Nicholas Cathedral,* 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120 (1952).

freedom of religion. The Fifth Circuit responded to Ambassador College's contentions as follows:

> We are faced with the scenario of a church and an individual contesting the validity of a gift by deed. There is no danger of *government* seeking to monitor or regulate a religious group. Indeed, the only government involvement in this case at all is the Georgia trial court's enforcement of the discovery order. We find that there are simply no free exercise considerations of even arguable validity raised by Ambassador College. Ambassador College has not demonstrated how its religious liberty would be infringed upon if it is required to answer the questions put to it.... Thus, the church must respond to discovery requests, as any other similarly situated litigant would be required.... The raising of a first amendment right does not require a balancing test of the interests involved in discovery.

*Id.* at 664–665 (emphasis in original).

A similar analysis was employed by the court in *Pagano v. Hadley*, 100 F.R.D. 758 (D.Del.1984), where the church had moved to quash a subpoena seeking documents from a priest's personnel file. In rejecting the church's "free exercise" argument, the court held that the production of the personnel file "will not interfere with the Bishop's right to believe as he chooses and to engage in the religious observances of his faith." *Id.* at 761. The court appropriately observed that although courts have always been careful about involvement in internal church affairs, "the production of existing documents needed for civil litigation in response to a subpoena simply does not involve any entanglement." *Id.* The court concluded its analysis with the following observation:

> Information in the possession of the Church has always been subject to civil process. This is precisely why states like Delaware have adopted statutes creating a priest-penitent privilege. If the Bishop were right about the protection afforded by the Constitution, there would be no need for such a privilege.

*Id.* (footnote omitted). *Pagano* was cited with approval in two cases involving bankruptcy proceedings. In *In re The Bible Speaks*, 69 B.R. 643, 647 (D.Mass.1987), the court held that cases involving civil litigation between private parties pose "no danger ... that the government will unconstitutionally entangle itself in church affairs by seeking to monitor or regulate religious activity. The state is not even a shadowy presence in this discovery`[as] the information requested relates to a private, secular dispute between an individual and a religious organization...." Similarly, in *In re Contemporary Mission, Inc.*, 44 B.R. 940, 943 (D.Conn.1984), the court held that the church's "First Amendment rights" claim does not assert a cognizable privilege allowing refusal of discovery requests because otherwise "any group could avoid discovery procedures by merely claiming to be a religious organization."

 We hold, consistently with the decided cases, that where the only action required of a religious institution is the disclosure of relevant, non-privileged documents to an adversary in civil litigation, such action, without more, poses no threat of governmental interference with the free exercise of religion. In the instant case, there is not one iota of evidence that court ordered discovery will "chill" the rights of appellants in the conduct of their religious affairs or inhibit their parishioners from engaging freely in the practice of their religious beliefs and activities. As the trial court appropriately observed, "[t]he relevant inquiry is not whether the church gives a file a particular name, but whether disclosure of the information requested from that file interferes with the exercise of religious freedom."

It is obvious from the opinion of the trial judge that he gave exceedingly careful consideration to the requests made by the parties pursuant to the Pennsylvania Rules of Discovery. His analysis is cogent and his rationale has been articulately expressed. We agree that discovery of documents contained in the Canon 489 file will not impermissibly intrude upon theological doctrine or the practice of religion. The requested documents are relevant as they

pertain to conduct of one or more church officials which is the subject of civil litigation. This information has not been shown to be privileged, and its discovery is not proscribed by the First Amendment free exercise clause of the Constitution. Therefore, the order allowing discovery and denying appellants' motion for protective order is, as it must be,

Affirmed.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting.

This case arises out of the trial court's disposition of a motion to compel discovery, and an opposing petition for a protective order. Because I conclude that we are without jurisdiction to entertain the issues presented, I would quash this appeal.

Samuel C. Hutchison filed a civil action claiming damages against Father Francis Luddy as a result of various sexual acts allegedly performed by Luddy through the year 1985, while Luddy was serving as a pastor. Hutchison's complaint also asserted causes of action against Bishop James Hogan, Monsignor Thomas Madden, Monsignor Roy F. Kline, Monsignor Paul Panza, Monsignor Ignatius Wadas, the Diocese of Altoona–Johnstown, St. Mary's Catholic Church, Cardinal John Krol and the Arch–Diocese of Philadelphia stemming from the same incidents.

In the course of this litigation, Hutchison filed a motion to compel discovery against Defendant–Appellants Bishop Hogan, Monsignor Madden, Monsignor Kline, Monsignor Panza, Monsignor Wadas, the Diocese of Altoona–Johnstown, and St. Mary's Catholic Church (hereafter the "Altoona–Johnstown parties") requesting that the trial court order compliance with Hutchison's requests for production of documents. The motion also requested dismissal of the Altoona–Johnstown parties' objections to those requests. The Altoona–Johnstown parties filed a motion requesting a protective order, contending that production should not be compelled on the basis of alleged defects in the requests

and on the basis that some of the documents sought are privileged. The trial court granted in part and denied in part each of the parties' motions, and the Altoona–Johnstown parties appeal.

In ruling on competing motions, the trial court denied the Altoona–Johnstown parties' request for a protective order regarding materials contained in the Canon 489 file; however, the order permitted Altoona–Johnstown Clergy to submit further protection requests or present the documents for *in camera* review within thirty days.

The Altoona–Johnstown parties filed notice of appeal with this court. *See* 42 Pa.C.S. § 742; Pa.R.A.P. 702, 42 Pa.C.S. The Altoona–Johnstown parties also filed a Petition for Review. *See* 42 Pa.C.S. § 702(b); Pa.R.A.P. 1311, 42 Pa. C.S. In response, Hutchison filed both a Motion to Dismiss, for jurisdictional reasons, and an Application for Disposition and/or Advancement of Argument of the Motion to Dismiss or/alternatively Advancement of Argument of Case.

On July 8, 1991, we determined that we possess jurisdiction over this case as a direct appeal; therefore, we issued an order dismissing as moot the Altoona–Johnstown parties' Petition for Review. For the same reason, we also issued an order denying Hutchison's Motion to Dismiss. Finally, we issued an order dismissing as moot Hutchison's Application for Disposition and/or Advancement of Argument of the Motion to Dismiss or/alternatively Advancement of Argument of Case. Accordingly, this appeal is before this panel as a direct appeal.

In determining that jurisdiction exists to entertain this case as a direct appeal, we relied upon *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and our decision in *Hutchison v. Luddy*, 398 Pa.Super. 505, 581 A.2d 578 (1990). Our decision in *Hutchison v. Luddy*, however, has since been reversed by a *per curiam* order of our Supreme Court which stated that the order under review was *not* final and, therefore, not appealable. *Hutchison v. Luddy*, 527 Pa. 525, 594 A.2d 307 (1991). I find it appropriate, therefore,

that we reconsider whether this case is properly before us, pursuant to 42 Pa.C.S. § 742.

It is well settled that an appeal to this court, unless otherwise permitted by statute, will lie only from a final order. *Pugar v. Greco,* 483 Pa. 68, 72, 394 A.2d 542, 544 (1978); See 42 Pa.C.S. § 742; Pa.R.A.P. 341, 42 Pa.C.S. A final order is usually one which ends the litigation, or alternatively, disposes of the entire case. *Pugar,* 483 Pa. at 73, 394 A.2d at 545, citing *Piltzer v. Independence Federal Savings and Loan Association,* 456 Pa. 402, 404, 319 A.2d 677, 678 (1974). Here, it is beyond dispute that the order in question, governing discovery, neither ends the litigation, nor disposes of the entire case. However, in determining what constitutes a final order, our Supreme Court, in *Pugar,* and *Piltzer,* has embraced the approach set forth in *Cohen v. Beneficial Industrial Loan Corporation,* 337, U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). There, the U.S. Supreme Court employed "a practical rather than technical construction" of the finality requirement, and created an exception to the traditional final judgment rule. Thus, the appellate courts of this state are to apply the approach of *Cohen* to determine whether the order is appealable, despite that it neither ends the litigation nor disposes of the case, as an exception to the traditional final judgment rule.

In *Cohen,* a district court had denied a defendant's petition to require the plaintiff to post security to cover the defendant's expenses and counsel fees should plaintiff's action prove unsuccessful in a stockholders' derivative action. The Supreme Court determined that that order was sufficiently final and appealable to permit review. A three-part test to determine appealability was articulated as follows: (1) the right sought to be protected in the appeal is separable from, and collateral to, the rights asserted in the action; (2) the claim must be too important to be denied review; and (3) the question was such that, if review was postponed until final judgment in the case, the claimed right would be irreparably lost. Applying the three part test, the

Supreme Court concluded that the order denying a petition to post security was sufficiently final to permit appellate review.

Pennsylvania appellate courts have, on several occasions, interpreted and applied the *Cohen* test to orders related to discovery. In *Gottschall v. Jones & Laughlin Steel Corporation*, 333 Pa.Super. 493, 482 A.2d 979 (1984), *cert. denied*, 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985), this court addressed the appealability of an order which temporarily sealed documents claimed by the defendants to be privileged until a hearing could be had on the privilege issue. We stated that *because the information sought had the potential to determine the ultimate issues of liability, and might even disqualify the plaintiff from pursuing the cause of action, the order involved issues not separable from and collateral to the underlying action* for the purposes of *Cohen*. *Gottschall*, 333 Pa.Super. at 500, 482 A.2d at 983. We therefore held that the order was interlocutory and unappealable. *Id.*

In *Doe v. Commonwealth Department of Public Welfare*, 105 Pa.Cmmw. 482, 524 A.2d 1063 (1987), the plaintiff alleged that she had been abducted and raped by an escaped prisoner as a result of the negligence of the defendants, and instituted a personal injury action. In discovery, Doe sought, *inter alia*, a memorandum which outlined the psychological status of the attacker and chronology leading up to the escape, and a document containing a retrospective analysis from several departments on the inmate's admittance, background and escape. Although the defendants refused to produce the documents on the basis of a claimed statutory privilege, the trial court concluded that the claimed privilege was inapplicable, and directed *in camera* inspection for determinations of relevancy. The defendants contended on appeal that the discovery order fell into the "collateral order" exception to the final order requirement. The Commonwealth Court held that, *because the documents sought had the potential to determine the ultimate issues of liability, the order compelling discovery*

*was not separable from and collateral to the merits of the action* for the purposes of determining appealability under *Cohen. Doe,* 105 Pa.Cmmw. at 485–87, 524 A.2d at 1065. Similarly, in *Commonwealth Department of Environmental Resources v. Texas Eastern Transmission Corporation,* 130 Pa.Cmmw. 655, 569 A.2d 382 (1990), the Commonwealth Court held that an order which compelled discovery of documents against a claim of attorney-client privilege was not separable and collateral, but rather, was interlocutory and unappealable under *Cohen.*

Guided by *Gottschall, Doe* and *Texas Eastern Transmission Corp.,* I conclude that the order here-involved cannot satisfy the "separate and collateral" prong of the *Cohen* test. The order compels discovery of documents related to Father Luddy, the sexual misconduct of priests of the Altoona–Johnstown Diocese with male children, and the transfer and assignment of priests of that diocese. This information is relevant to the resolution of the ultimate issues of the underlying claims; therefore, the trial court's order cannot be deemed separable from and collateral to the issues and rights asserted in the action. Accordingly, the order in question fails the first requirement of the three-part *Cohen* test, and it is not necessary to consider the two remaining elements. *See Gottschall,* 333 Pa.Super. at 500, 482 A.2d at 983; *Doe,* 105 Pa.Cmmw. at 485–87, 524 A.2d at 1065.

Furthermore, as the order appealed from expressly permits the Altoona–Johnstown parties to submit further requests for protective orders as to any document contained within the file, I find it difficult to deem the order to have been final in any respect with regard to the production of those documents.

Finally, this court has expressed its reluctance to provide supervision of discovery proceedings in cases pending in the trial courts. *See McManus v. Chubb Group of Insurance Companies,* 342 Pa.Super. 405, 493 A.2d 84 (1985). Similarly, the Commonwealth Court in *Doe,* citing *Borden Co. v. Sylk,* 410 F.2d 843, 846 (3rd Cir.1969), noted the potential

burden which appeals from discovery orders would have on appellate courts, and observed that, to allow such appeals as a matter of right, "would constitute the [appellate courts] as second-stage motion courts...." *Doe*, 105 Pa. Cmmw. at 486, 524 A.2d at 1065. I believe that these concerns are valid.

I conclude that the order in question is interlocutory and unappealable fully cognizant of our recent decision in *Commonwealth v. Miller*, 406 Pa.Super. 206, 593 A.2d 1308 (1991). There, we reviewed a trial court order directing the Women's Resource Center of Fayette County to provide to the trial court, for *in camera* inspection, all records and information in their possession pertaining to an alleged victim of a sexual assault. We determined there that the order satisfied the three prongs of *Cohen*, including the "separable and collateral" aspect, and proceeded to consider the merits of the appeal. However, *Miller* is to be distinguished from the case at bar because the order in *Miller* compelled discovery from a *non-party*. This court has previously noted that an order compelling discovery of a person not party to the original complaint could arguably be appealed under the collateral order doctrine. *See Steel v. Weisberg*, 347 Pa.Super. 106, 500 A.2d 428 (1985). The order involved here, however, compels discovery from a party.

The Majority Opinion, without analysis, declares that "[t]he order from which the appeal was taken does not decide the principal action but is collateral thereto." Majority Opinion at 143–144. This assertion appears to ignore both *Gottschall* and *Doe, supra.* I need not disagree with the Majority's conclusion that the Church's claimed right of confidentiality is too important to be denied review. Nor need I dispute the Majority's assertion that to postpone review until final judgment would cause the claimed right to be irreparably lost. The three prongs of the *Cohen* test are conjunctive; all three must be satisfied for the rule to be implemented. Where, as here, the right sought to be protected is neither separable from, nor collateral to, the

rights asserted in the action, the remaining two prongs of the *Cohen* test are rendered immaterial.

Moreover, the Majority concedes that the order now under review grants leave to the Altoona–Johnstown parties to seek further protective orders or to present the documents for in camera review before disclosure to the adverse party. On this basis, it cannot be reasonably argued that the review of the claimed right is being postponed until final judgment.

Nor can I agree with the majority that to quash the appeal "serves no purpose other than delay." Majority Opinion, page 144 n. 2. For the reasons I have stated, I conclude that the order is interlocutory. The order is not among those interlocutory orders for which appellate review exists as of right. *See* Pa.R.A.P. 311, 42 Pa.C.S. Our jurisdiction to review the order, therefore, must rest, if at all, in 42 Pa.C.S. § 702(b) Interlocutory appeals by permission. *See also* Pa.R.A.P. 312, 42 Pa.C.S. An appellate court is authorized to exercise its discretion to permit an appeal from some interlocutory orders. 42 Pa.C.S. § 702(b). However, our Superior Court Internal Operating Procedures direct that petitions for permission for review are subject to review and vote by *all of the commissioned judges*. Int.Op.Pro. § 302(A). It is my opinion that the right of the full Court to review and consider whether to permit an appeal by permission serves purposes other than "delay." Because I am unable to find any proper basis for this panel to proceed to entertain the merits of this appeal without further empowerment from the full Court, I must respectfully dissent from my distinguished colleagues' decision.

For the foregoing reasons, I conclude that the Order of March 2, 1990, as amended by the Order of March 27, 1990, is not appealable as a final order under 42 Pa.C.S. § 742. Accordingly, I should conclude that we lack jurisdiction to consider the merits of the issues presented, and that we are required to quash this appeal.